| | | |
|---|---|---|
| ANDREW L. SCHLAFLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4-17-cv-00283-JAR |
| | ) | |
| EAGLE FORUM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## EAGLE FORUM'S RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

COMES NOW, Defendant Eagle Forum, by and through its attorneys, SmithAmundsen LLC, and for its Response in Opposition to Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 32) (the "Second 'Emergency' TRO"), states as follows:

## INTRODUCTION

The Second "Emergency" TRO[1] filed by Plaintiff is not the result of any emergency circumstance – it should suffer the fate of Plaintiff's Verified Petition for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Declaratory Judgment (Doc. 9) ("First

---

[1] Plaintiff styles his motion as seeking a temporary restraining order and a preliminary injunction. However, Plaintiff's proposed order is ostensibly limited to the grant of a temporary restraining order. To the extent that there exists any confusion regarding the relief sought by Plaintiff, and in order to foreclose any attempts by Plaintiff to subsequently mischaracterize the denial of his present motion as the denial of a preliminary injunction (and thus allege grounds for appellate jurisdiction), this Court should deny Plaintiff's Second "Emergency" TRO in the same fashion that it rejected Plaintiff's first attempts at emergency injunctive relief [Doc. No. 31, p. 11]: by entering (1) a denial of Plaintiff's motion for a temporary restraining order and (2) a denial without prejudice of Plaintiff's motion for preliminary injunction. This will help ensure that Plaintiff is not able to later contrive appellate jurisdiction where none exists. Compare Phyllis Schlafly Revocable Trust, et al. v. Anne Cori, et al., No. 4:16-cv-01631-JAR, Doc. 56 (E.D. Mo. April 17, 2017) ("IT IS FURTHER ORDERED that Plaintiffs' Second Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 46) is DENIED") and Phyllis Schlafly Revocable Trust, et al. v. Anne Cori, et al., No. 4:16-cv-01631-JAR, Doc. 62 (E.D. Mo. May 16, 2017) (providing notice that Eagle Trust Fund and the Phyllis Schlafly Revocable Trust, each controlled by John Schlafly as trustee, appeal "the interlocutory decision … denying Plaintiffs' Motion for Preliminary Injunction").

'Emergency' TRO"), previously denied by this Court. Plaintiff complains that convening a meeting of the Eagle Forum Board of Directors on September 15, 2017 (the "September 15 Meeting") will harm him, because it is an extension of an allegedly improper special board meeting on January 28, 2107 (the "January 28 Meeting"). This claim is farcical; Eagle Forum has been conducting business, including monthly board meetings, on a consistent basis since the January 28 Meeting.

In fact, it is Plaintiff who is threatening Eagle Forum. Plaintiff's numerous attempts to destroy Eagle Forum are not limited to the present motion, or to the present lawsuit.[2] This Court need not look any further than the timing of the present motion to divine Plaintiff's true intentions. Plaintiff is simply using the September 15 Meeting as a pretext to resurrect his failed attempts to cripple the governance of Eagle Forum. Indeed, Plaintiff's Second "Emergency" TRO is *actually* occasioned by the denial of Plaintiff's First "Emergency" TRO. On Friday, September 8, 2017, this Court denied Plaintiff's First "Emergency" TRO. On Monday, September 11, 2017, Plaintiff filed a new TRO (i.e., the Second "Emergency" TRO). Baseless emergency injunctive relief has become the preferred method of attack for Plaintiff and his cohorts, including Ed Martin and John Schlafly (who controls Eagle Trust Fund and the Phyllis Schlafly Revocable Trust as trustee)[3]; indeed, any action involving these individuals inevitably becomes mired by their stratagem to rush to court on emergency injunctive motions devoid of evidence and based solely on self-serving declarations and/or affidavits[4]. Unfortunately, this

---

[2] *See Andrew L. Schlafly v. The Lincoln National Life Ins. Co., et al.*, No. 2:17-cv-02522-ES-SCM, currently pending in the United States District Court for the District of New Jersey.
[3] *See Phyllis Schlafly Revocable Trust, et al. v. Anne Cori, et al.*, No. 4:16-cv-01631-JAR, Doc. 56 (E.D. Mo. April 17, 2017) ("IT IS FURTHER ORDERED that Plaintiffs' Second Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 46) is DENIED")
[4] *See Anne Cori, et al. v. Edward R. Martin, Jr., et al.*, No. 3:17-cv-00590-MJR-SCW, Doc. 21 (S.D.IL. June 9, 2017) (Defendants Eagle Trust Fund and Eagle Forum Education and Legal Defense Fund's Emergency Motion for Protective Order).

matter (though Plaintiff has neglected to push it past its infancy) does not show signs of being any different.

Regardless, as with all prior attempts to invoke "emergency" injunctive relief by his cohorts, Plaintiff's unclean hands doom his claim of entitlement to equitable relief. Here, Plaintiff is essentially challenging (notably, for a second time) his exclusion from an organization which he tried to destroy from within, so that a competing organization which he founded, Phyllis Schlafly's American Eagles ("PSAE"), can usurp Eagle Forum. Plaintiff's impossible position, convincing the Court that he should be reinstated so that his egregious breaches of fiduciary duty may continue unchecked, is all the more insurmountable as Plaintiff already challenged the January 28 Meeting and then subsequently chose to abandon that same challenge prior to a hearing. Plaintiff's attempt to continue his malfeasance from within Eagle Forum does not deserve a second bite at the apple. Expectedly, the inequity and unjustified delay of Plaintiff's request, in addition to being an independent bar, further compromises Plaintiff's attempts to make out a prima facie case that he is entitled to injunctive relief. Plaintiff cannot demonstrate a likelihood of success on the merits, nor immediate and irreparable harm; nor that a balancing of the harms or the public interest favor his position. Accordingly, Plaintiff Second "Emergency" TRO should be swiftly denied.

## **PROCEDURAL HISTORY**

Plaintiff's recitation of the procedural history of this case is at best incomplete and, at worst, outright misleading. Plaintiff fails to disclose to this Court that, after this very matter was removed, Judge Fleissig promptly conducted a conference call on Thursday, January 26, 2017. During that conference call, it became clear that, at the same time that Plaintiff was seeking a TRO to prevent the January 28 Meeting, Plaintiff's brother and co-conspirator, John Schlafly,

had filed a separate motion in Madison County, Illinois seeking to enjoin the same board meeting. As a result, Plaintiff voluntarily withdrew his First "Emergency" TRO,[5] and the hearing on that defective motion was canceled. See E-mail between Plaintiff's counsel and other counsel in this case, attached hereto as **Exhibit A**. The case was subsequently reassigned to this Court.

Ironically, the motion filed in Madison County by Plaintiff's co-conspirators, John Schlafly and Ed Martin, to enjoin the January board meeting resulted in a similar, self-inflicted defeat. At the hearing before Judge Ruth on January 27, 2017, Judge Ruth asked counsel whether John Schlafly and Ed Martin were willing to testify regarding their compliance, or lack thereof, with the Madison County Court's earlier order, i.e. whether John Schlafly and Ed Martin suffered from unclean hands. After a lunch recess to allow counsel to discuss this matter with his clients, Judge Ruth was advised that no witnesses would be called to testify, and rather than be subject to cross examination, John Schlafly and Ed Martin would "stand on [their] pleadings." As a result, the motion seeking to enjoin the January board meeting was denied. *See* Madison County Transcript, attached hereto as **Exhibit B**.

In short, Plaintiff's Second "Emergency" TRO, like his earlier motion and the parallel motion filed by his co-conspirators, is the product of the worst sort of litigation gamesmanship. Notably, Plaintiff has apparently jettisoned his local counsel and elected to solely represent himself in this matter. Plaintiff continues to use his law license, solely through his admission pro hac vice, to engage in a scorched-earth war of attrition, in the hopes that he can overwhelm and/or inflict as much damage as possible in the form of unnecessary legal fees and expenses upon Eagle Forum.

---

[5] There were also several procedural defects plaguing Plaintiff's motion, such as the failure to file an actual motion for temporary restraining order or a supporting memorandum.

# FACTUAL BACKGROUND

*Plaintiff's Breach of His Fiduciary Duties*

In early 2016, a rift formed regarding internal governance and the future of Eagle Forum. On one side were at least six (6) of Eagle Forum's board members: Anne Schlafly Cori, Eunie Smith, Rosina Kovar, Shirley Curry, Carolyn McLarty, and Cathie Adams (the "Majority Directors"). The Majority Directors are disparagingly referred to by Plaintiff and his co-conspirators as the "Gang of Six". On the other side was a minority group of board members consisting of John Schlafly, Andrew Schlafly, Phyllis Schlafly, and Kathleen Sullivan. Edward R. Martin, Jr. ("Martin") was under increasing scrutiny as to his failed management and leadership of Eagle Forum. Around April 2016, it became apparent to the Majority Directors that irreconcilable differences existed with Martin. Therefore, the Majority Directors sought his removal at a telephone Board meeting held in April 2016, which was agreed to by Phyllis Schlafly.

After the April 2016 meeting, at which Plaintiff and his co-conspirators suffered a major blow to their control of Eagle Forum, Plaintiff sent an email to John Schlafly and Ed Martin. *See* Email, attached as **Exhibit C**. In this correspondence, Plaintiff, while still a director of Eagle Forum, sets out a plan to destroy Eagle Forum and create a new entity which will be easier to control. Further, Plaintiff delineates a plan to mire Eagle Forum's assets in litigation for years. *Id.*

Thereafter, Ed Martin, John Schlafly, Plaintiff, and others took additional steps in their effort to destroy Eagle Forum. They created a new entity, PSAE, to compete with Eagle Forum, while still holding positions as directors on Eagle Forum's Board and arguing in the Madison County case to maintain those roles. PSAE is a 501(c)(4) organization which directly competes

with Eagle Forum. The minority group held positions in PSAE from its inception, in violation of their fiduciary duty to Eagle Forum. For example, on May 12, 2016, the foregoing filed the 2016 Annual Report for PSAE, which lists the minority group, including Plaintiff, as directors and/or officers of PSAE. *See* PSAE 2016 Annual Report, attached hereto as **Exhibit D**. After the formation of PSAE, the minority group immediately began fundraising in an attempt to divert assets, resources and support from Eagle Forum, to which they were legally duty bound to protect.

*Resignation of La Neil Spivy*

In early January 2017, Eunie Smith ("Smith"), as the Acting President of Eagle Forum, learned that La Neil Spivy ("Spivy"), a director of Eagle Forum, intended to resign her position due to her declining health. *See* Affidavit of Eunie Smith, attached hereto as **Exhibit E**. Smith called Spivy and was informed that Spivy "already considered herself resigned" from the Board. *Id.* at ¶ 5. Smith then suggested to Spivy that she confirm her resignation in writing. *Id.* at ¶ 6. On January 11, 2017, Smith received a handwritten letter from Spivy which stated "Please consider this my resignation from Eagle Forum Organization C4." *Id.* at ¶¶ 7 and 9. These events are further corroborated by the Affidavit of Jan Gentry, attached hereto as **Exhibit F.**

*Removal of Plaintiff*

In light of their role in the ligation and the formation and fundraising efforts of PSAE, it became apparent to Eagle Forum that it would need to seek the removal of Plaintiff, John Schlafly and Kathleen Sullivan at a special meeting[6]. On January 6, 2017, Eunie Smith, Anne Schlafly Cori, and Cathie Adams sent notice to all the directors of Eagle Forum of a special meeting to be held on January 28, 2017 at 3:30 p.m. *See* Notice of Special Meeting, attached

---

[6] Eunie Smith also sought the voluntary resignation of Plaintiff, John Schlafly, and Kathleen Sullivan. *See* Exhibit E, ¶ 13.

hereto as **Exhibit G**. The Notice stated that the special meeting would be held for the purpose of removing Plaintiff, John Schlafly, and Kathleen Sullivan. The Notice was sent to Plaintiff at 939 Old Chester Road, Far Hills, New Jersey 07931. *See* Certified Mail Receipt, attached hereto as **Exhibit H**. Notably, this is the same address that Plaintiff uses to sign his pleadings in this case. *See* Doc. 32.

The meeting was held as planned on January 28, 2017. Despite receiving notice, neither Plaintiff, John Schlafly, nor Kathleen Sullivan was present at the meeting. The meeting was called to order by Smith, who thereafter presented the resignation letter of Spivy to the Board. Thereafter, Plaintiff, John Schlafly, and Kathleen Sullivan were removed from the Board in a vote of 6 to 0.

Instead of attending the properly noticed meeting, Plaintiff, John Schlafly and Kathleen Sullivan purported to take action in lieu of a meeting, claiming to be the "disinterested" directors. Such action included entering into four indemnity agreements, which purport to bind Eagle Forum to indemnify Plaintiff, John Schlafly, Kathleen Sullivan, and Ed Martin with regard to the pending litigation matters. *See* Consent to Action Without Meeting, attached hereto as **Exhibit I**.

*Plaintiff's Attempts to Cripple Eagle Forum*

Since his removal, and true to his plan as laid out in Exhibit C, *supra*, Plaintiff has made multiple attempts to cripple Eagle Forum by starving it of assets and stifling its corporate governance.

On March 13, 2017, Plaintiff filed a civil action complaint against The Lincoln National Life Insurance Company ("Lincoln"), in the Superior Court of New Jersey, Morris County Law Division. A copy of Plaintiff's New Jersey Complaint is attached hereto as **Exhibit J**. On or

around March 21, 2017, Plaintiff filed his amended complaint, adding John Hancock Life Insurance Company (U.S.A.) ("John Hancock"). A true and accurate copy of Plaintiff's Amended Complaint is attached hereto as **Exhibit K.** In his Amended Complaint, Plaintiff seeks to claim the proceeds of two life insurance policies insuring the life of Phyllis Schlafly, which were paid for and owned by Eagle Forum. These two insurance policies represent over 3.4 Million Dollars ($3,400,000.00) owed to Eagle Forum. Both of these policies name Eagle Forum as the beneficiary and were executed by Phyllis Schlafly in Missouri. Plaintiff's legal argument is that the proceeds of the insurance policies should be paid to the members of Eagle Forum, instead of the corporation.[7]

In April, 2017, Lincoln removed Plaintiff's Amended Complaint to the United States District Court for the District of New Jersey. *See* Notice of Removal, attached hereto as **Exhibit L**. Both Lincoln and John Hancock immediately filed counterclaims for interpleader and interpleaded the funds from the policies into the court. *See* Lincoln's Answer, Counterclaim, and Third-Party Complaint, attached hereto as **Exhibit M** and John Hancock's Answer, Counterclaim, and Third-Party Complaint, attached hereto as **Exhibit N**. John Hancock moved for a dismissal of all claims against it and for an award of attorneys' fees. *See* John Hancock's Motion for Discharge, including Dismissal of All Claims against It, and for Award of Attorneys' Fees, attached hereto as **Exhibit O**. In response, Plaintiff filed a letter stating that he would not oppose either the dismissal of his claims against John Hancock, or an award of attorneys' fees to John Hancock out of the insurance proceeds. *See* Letter, attached hereto as **Exhibit P**. This is unquestionably an attempt by Plaintiff to starve Eagle Forum of assets, while also requiring Eagle Forum to pay Lincoln and John Hancock's legal fees out of the insurance proceeds.

---

[7] Notably, it appears that this legal theory has been long rejected in Missouri (*State ex inf. Harvey v. Missouri Athletic Club*, 170 S.W. 904, 907 (Mo. 1914)), Illinois (*Manufacturers' Exhibition Bldg. Co. v. Landay*, 219 Ill. 168, 175-76 (1905)), and New Jersey (*Conway v. Halsey*, 44 N.J.L. 462, 463 (Sup. Ct. 1882)).

Similarly, Plaintiff is using this action to stifle Eagle Forum's corporate governance. As this Court is aware and as discussed above, this case was originally filed by Plaintiff in the Circuit Court for St. Louis County, Missouri days before the January 28 Meeting. (See Doc. 9). When Plaintiff's co-conspirators filed a similar motion in the Circuit Court for Madison County, Illinois, Plaintiff decided not to proceed on his First Emergency Motion. *See* **Exhibit A**. Now, in conjunction with his attempts to starve Eagle Forum of its assets, Plaintiff (again) attempts to stifle Eagle Forum's ability to function as a corporation with his Second "Emergency" TRO.

*Eagle Forum's Operations Since the January Meeting*

Plaintiff's Second "Emergency" TRO and accompanying memorandum misstate that Eagle Forum has not held a meeting since the January 28 Meeting. In fact, Eagle Forum has held regular board meetings monthly since the January 28 Meeting. *See* Declaration of Anne Schlafly Cori, attached hereto as **Exhibit Q**. At these meetings, Eagle Forum has nominated new directors to the Board, conducted the business of Eagle Forum, and taken other actions as allowed by its Bylaws. Eagle Forum has also taken actions to support its keynote event each year, Eagle Council.

## ARGUMENT

<u>"He Who Seeks Equity Must Do Equity"</u>

A temporary restraining order is an equitable remedy. *See U.S. ex rel. Goldman v. Meredith*, 596 F.2d 1353, 1356 (8th Cir. 1979). "It is one of the fundamental principles upon which equity jurisprudence is founded that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." <u>Keystone Driller Co. v. General Excavator co.</u>, 290 U.S. 240, 244 (1933) (internal quotation marks and citation omitted). Therefore, before this Court can consider

the merits of Plaintiff's Second "Emergency" TRO, it must first determine "whether he who seeks equity has done equity." *Smith v. World Ins. Co.*, 38 F.3d 1456, 1463 (8th Cir. 1994).

Here, it is clear that Plaintiff has not done equity based on his breach of his duty of loyalty to Eagle Forum and his use of litigation as a tactic to deplete Eagle Forum's assets and bring its corporate governance to a halt.

As described above, after the Majority Directors took actions to remove Ed Martin as president of Eagle Forum in April 2016, Plaintiff, along with other directors of Eagle Forum, created a competing entity, PSAE, to with which they would re-direct donations and resources from Eagle Forum. Plaintiff now seeks to bring Eagle Forum's corporate governance to a standstill, so he can continue the inequitable actions he began when he served as a director of Eagle Forum. By Plaintiff's own admission, he now seeks to use litigation, which he plans to drag out for years, to tie up Eagle Forum's assets and prevent Eagle Forum's operation as a corporation. *See* **Exhibit C**. In the meantime, Plaintiff, along with his co-conspirators, plans to build up PSAE to fill the void.

Plaintiff's use of litigation as an attempt to destroy Eagle Forum is clear from an analysis of Plaintiff's tactics. The initial lawsuit regarding the governance of Eagle Forum was filed by the Majority Directors in the Circuit Court of Madison County against John Schlafly, Ed Martin, and Eagle Forum. Instead of intervening in that lawsuit, Plaintiff chose to file this action in the Circuit Court for St. Louis County, Missouri. Further, instead of filing his lawsuit to prevent the January 28 Meeting when he first received notice of the meeting, he decided to wait and file his First "Emergency" TRO to prevent the meeting. In fact, Plaintiff's choice of St. Louis County for his action appears to be a direct attempt at forum shopping. While John Schlafly and Ed

Martin sought to prevent the January 28 meeting in Madison County, Plaintiff chose St. Louis County in an attempt to get a second bite at the apple in front of a new judge.

Moreover, Plaintiff's New Jersey action exemplifies similar gamesmanship. While having a case pending against Eagle Forum before this Court, and a case pending in Illinois that had already addressed life insurance policies owned by Eagle Forum, Plaintiff filed a civil action in New Jersey, looking to divert funds from Eagle Forum. These insurance policies were issued to Phyllis Schlafly in Missouri for the benefit of an Illinois not-for-profit corporation. There is no doubt that Plaintiff's lawsuit could have been brought in the St. Louis County Circuit Court or Illinois State Court. Rather, Plaintiff decided to litigate close to his home in New Jersey, to force Eagle Forum to incur additional expenses to hire attorneys to protect its rights in that forum.

Adding to his inequitable conduct, Plaintiff's claim in the New Jersey case is wholly without merit. Essentially, Plaintiff argues that the members of Eagle Forum are entitled to the proceeds of an insurance policy which is owned by Eagle Forum and lists Eagle Forum as the sole beneficiary. However, the courts of Missouri, Illinois and New Jersey have held for over one hundred years that property belonging to a corporation does not belong to its members. *See State ex inf. Harvey v. Missouri Athletic Club*, 170 S.W. 904, 907 (Mo. 1914) ("[A]s a matter of fact, the property of an incorporated company, regardless of the article of the statute under which it is organized, is not held in common by the members or shareholders, but is owned by the artificial person which the law has permitted to be created, the prime purpose of whose creation is to enable it to contract and hold property in some form for some purpose. <u>This seems too elementary to waste words in its discussion.</u>") (emphasis added); *See also Manufacturers' Exhibition Bldg. Co. v. Landay*, 219 Ill. 168, 175-76 (1905) ("The property of a corporation is not subject to the control of individual members, whether acting separately or jointly. They can

neither [e]ncumber or transfer that property nor authorize others to do so."); *See also Conway v. Halsey*, 44 N.J.L. 462, 463 (Sup. Ct. 1882) ("The adjudication was rested on general principles which lie at the basis of all corporate existence. There were . . .: that the corporation is a distinct person in law, in whom all the corporate property is vested . . .; [and] that the individual members of the company have no right or power to intermeddle with the property or concerns of such company[.]"). Clearly, Plaintiff's claim in the New Jersey case is without merit.

Plaintiff's ulterior motives in the New Jersey case became abundantly clear as the case progressed. As is common on claims for insurance proceeds, John Hancock and Lincoln filed a counterclaim for interpleader, named multiple third-party defendants, and paid the funds into court. Upon paying the funds into Court, John Hancock filed a motion to dismiss all claims against it, discharge it from all further liability and for an award of attorneys' fees incurred in the interpleader action. As expected, Eagle Forum opposed this motion, especially the award of attorneys' fees out of the insurance proceeds. Curiously, Plaintiff filed a letter with the court, stating that he would not oppose either the dismissal of his claims against John Hancock or an award of attorneys' fees to John Hancock out of the insurance proceeds. Clearly, Plaintiff does not seek real relief in the New Jersey case and rather seeks only to harass Eagle Forum with litigation and deplete as much of the insurance proceeds due to Eagle Forum as possible.

Under these facts, it is clear that Plaintiff has not done equity and therefore he is not entitled to equitable relief from this Court.

<u>Plaintiff's Second "Emergency" TRO is Barred by the Equitable Doctrine of Laches</u>

Alternatively, if this Court finds that Plaintiff has done the equity required to entitle him to equitable relief, the equitable doctrine of laches should bar Plaintiff's Second "Emergency" TRO. "The equitable doctrine of laches bars the plaintiff whose unreasonable delay in

prosecuting a claim or protecting a right has worked a prejudice to the defendant." *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, --- U.S. ----, 137 S.Ct. 954, , 197 L.Ed.2d 292, (2017).

Plaintiff first received notice that Eagle Forum sought to remove him from the Board on January 6, 2017. Despite this, Plaintiff waited until January 19, nine (9) days before the scheduled Board meeting, to seek a temporary restraining order in a new court to block the Board meeting. After it became clear that his First "Emergency" TRO had serious procedural deficiencies, Plaintiff decided not to pursue his motion.

Now, eight (8) months have passed since Plaintiff abandoned his First "Emergency" TRO. In that time, Eagle Forum held a properly noticed Board meeting to remove Plaintiff and has held numerous other Board meetings to take other, significant corporation actions. For example, Eagle Forum has appointed a member to fill Plaintiff's vacant directorship, hired accountants and auditors to review its books and records, hired new employees, and has taken steps to authorize and plan its annual keynote event, Eagle Council.

Essentially, Plaintiff seeks to re-litigate his First "Emergency" TRO to determine whether the January 28 Meeting was properly held. The Circuit Court of Madison County, the court with ultimate jurisdiction over Eagle Forum under the Internal Affairs Doctrine,[8] has already determined that the January 28 Meeting was proper. Further, Plaintiff already had the opportunity to present his arguments regarding the January 28 Meeting and tellingly decided not to proceed before Judge Fleissig. Halting Eagle Forum's corporate activity at this point would be inequitable, especially since Plaintiff has slept on his rights. Therefore, the equitable doctrine of laches should clearly bar Plaintiff's Second "Emergency" TRO.

---

[8] As discussed below, the Internal Affairs Doctrine states generally that the laws of the state of incorporation of a corporation should govern the internal affairs of said corporation. Here, Eagle Forum is bound by the laws of Illinois, not Missouri.

Plaintiff's Second "Emergency" TRO Fails on the Merits

Finally, in the unlikely event that this Court finds that Plaintiff has done equity and that his Second "Emergency" TRO is not barred by the equitable doctrine of laches, this Court should refuse to grant Plaintiff's Second "Emergency" TRO because he cannot meet the high bar required for the issuance of a temporary restraining order.

"A temporary restraining order is an extraordinary and drastic remedy." Ventimiglia v. St. Louis C.O.G., Inc., No. 4:08CV1199 CDP, 2008 U.S. Dist. LEXIS 99591, at *2 n.1 (E.D. Mo. Dec. 10, 2008). The "burden of proving" that this extraordinary and drastic relief should be awarded "rests *entirely* on the movant." See Spann v. Corr. Med. Servs., No. 4:05CV1470 CDP, 2006 U.S. Dist. LEXIS 6732, at *2-3 (E.D. Mo. Feb. 22, 2006). The Eighth Circuit Court of Appeals has set out the factors for determining whether a temporary restraining order or preliminary injunction should issue. Spann, 2006 U.S. Dist. LEXIS 6732, at *2-3 (citing Dataphase Sys. v. C L Sys., 640 F.2d 109, 114 (8th Cir. 1981)). The factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase, 640 F.2d at 114.

**Plaintiff Cannot Demonstrate Any Probability Of Succeeding On The Merits.**

Most importantly, Plaintiff must show a probability that he will succeed on the merits of his underlying claim. Here, that claim seems to be that Eagle Forum's removal of him at the January 28 Meeting was improper. To advance this argument, Plaintiff relies on Missouri law, Illinois law, Eagle Forum's Bylaws, and other argumentative conjecture that is wholly unrelated to his lawsuit filed in January 2017.

*Eagle Forum is Governed by Illinois law, not Missouri law*

First, Eagle Forum's corporate governance is in turn governed by Illinois law pursuant to the Internal Affairs Doctrine. The Internal Affairs Doctrine is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." *Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997). "States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care." *Id.*

Here, Eagle Forum is incorporated in Illinois as a not-for-profit corporation pursuant to the Illinois General Not For Profit Corporation Act of 1986, 805 ILCS 105. Much like the multitude of Delaware corporations operating in Missouri, Eagle Forum's internal affairs, such as the removal of directors, is governed by Illinois, not Missouri, law. Therefore, when removing a director, Eagle Forum must comply with the provisions of Illinois law, as well as its Bylaws.

*The Requirements of Illinois Law to Remove a Director*

Illinois law requires that a corporation have a board of directors to manage the affairs of the corporation. 805 ILCS 105/108.05(a). Illinois law further states that "[n]o director may act by proxy on any matter."[9] *Id.* at 108.05(d). Regarding resignation, Illinois law states that a director may resign at any time by written notice delivered to the board of directors, its chairman, or to the president or secretary of the corporation. *Id.* at 108.10(g).

Illinois prescribes specific rules regarding the removal of directors. Where the corporation has no members entitled to vote for directors, a director may be removed by the

---

[9] Plaintiff strangely raises the issue voting by proxy for LaNeil Spivy, which is a moot point as she resigned prior to the January 28 Meeting took place. In addition, there is no evidence that LaNeil Spivy's resignation was improper. Put simply, this issue is not relevant to the Plaintiff's claims.

affirmative vote of a majority of the directors then in office present and voting at a meeting of the board of directors at which a quorum is present. *Id.* at 108.35(b). In the case of a corporation with members entitled to vote for directors, a director may be removed "by the affirmative vote of two-thirds of the votes present and voted, either in person or by proxy." *Id.* at 108.35(c)(1). Further, when a corporation seeks to remove a director, it must provide at least twenty (20) days' notice of the proposed removal to all directors. *Id.* at 108.25. Notably, "[u]nless provided otherwise in the articles of incorporation or the bylaws, neither the business to be transacted at, nor the purpose of, any regular or special meeting of the board of directors need be specified in the notice . . . of such meeting[.]" *Id.* In any event, proper notice was provided, which is what gave rise to the present lawsuit by Plaintiff, as well two "Emergency" motions, both of which were abandoned.

*The Requirements of Eagle Forum's Bylaws to Remove a Director*

Eagle Forum's Bylaws, at the time of the January 28 Meeting, are silent as to the removal of directors. *See* Bylaws of Eagle Forum as they existed on January 6, 2017, attached hereto as **Exhibit R**. The Bylaws do state that "[t]he Board of Directors shall meet at least once a year at the call of the President or of three members of the Board." *Id.* at Article Five, Section 3. Additionally, "[n]otice of the meetings, specifying the time and place shall be mailed to each director at least ten days prior to the date of the meeting." *Id.*

*Eagle Forum Complied With Illinois Law and its Bylaws in Removing Plaintiff*

Here, Eagle Forum has complied with the requirements of Illinois law to remove a director of a not-for-profit corporation. First, Eagle Forum provided written notice to all directors on January 6, 2017 that it intended to remove Plaintiff and other minority directors from the Board at a special meeting held on January 28, 2017. Eagle Forum provided twenty-

two (22) days' notice, but was only required to provide twenty (20) days' notice pursuant to Illinois law and ten (10) days' notice pursuant to the Bylaws. Further, at the time of the meeting there were nine directors of Eagle Forum: the Majority Directors (6), Plaintiff, John Schlafly, and Kathleen Sullivan. LaNeil Spivy had previously resigned in compliance with Illinois law. At the properly noticed meeting, six (6) of the nine (9) directors voted to remove Plaintiff, equaling a two-thirds vote of the total directors, and a unanimous vote of those present at the meeting.

As Eagle Forum has complied with the provisions of Illinois law and Eagle Forum's Bylaws governing the removal of directors of a not-for-profit corporation, Plaintiff has **no** probability of success on the merits of his claim that Eagle Forum improperly removed him from the Board.

**Plaintiff Cannot Demonstrate Immediate And Irreparable Harm.**

"In the absence of irreparable injury, a party is not entitled to injunctive relief." *Tracy v. SSM Cardinal Glennon Children's Hosp.*, No. 4:15-CV-1513 CAS, 2016 U.S. Dist. LEXIS 89993, at *39 (E.D. Mo. July 12, 2016). "Merely demonstrating the 'possibility of harm' is not enough." *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015) (citation omitted).

Plaintiff cannot satisfy the irreparable harm element required for a temporary restraining order. Plaintiff attempts to argue that he will be immediately and irreparably harmed if he is excluded from the September 15 Meeting. However, Plaintiffs alleged harm does not stem from his exclusion from the September 15 Meeting, but from his previous removal as a director at the January 28 Meeting. Plaintiff is not entitled to vote at the September 15 Meeting because he is no longer a director, not because Eagle Forum is excluding him and preventing from voting.

Therefore, there can be no threat of harm, as the harm alleged by Plaintiff has already occurred. Again and notably, Plaintiff has already come before this Court to prevent the January 28 Meeting, but elected not to proceed with his First "Emergency" TRO.

**The Balancing Of the Harms and Public Interest Clearly Favors Eagle Forum, Not Plaintiff.**

Finally, Plaintiff cannot show that the balancing of the harms or the public interest weigh in his favor. In fact, both clearly weigh in favor of Eagle Forum.

Plaintiff argues that Eagle Forum will benefit from the entry of a temporary restraining order. This could not be further from the truth. In January, Eagle Forum rightfully purged itself of directors who were actively attempting to destroy it from within and transfer its goodwill and assets to a new entity, PSAE. Since then, Eagle Forum has appointed new, loyal directors, taken steps to identify and remediate the damage caused by Plaintiff and his co-conspirators, in order to return Eagle Forum to a sense of normalcy, as evidenced by holding its keynote Eagle Council event later this week. A temporary restraining order would cause great harm to Eagle Forum by preventing it from remediating the injuries caused by Plaintiff. Moreover, it would give Plaintiff the upper hand as his co-conspirators continue to try to destroy Eagle Forum and wrongfully replace it with PSAE. Compared to the harm that Plaintiff will suffer if a temporary restraining order is not entered, it is clear that Eagle Forum's harm greatly outweighs any contrived, artificial harms to Plaintiff.

Plaintiff's main argument that a temporary restraining order is supported by the public interest is that he seeks to require compliance with the law and the Bylaws. However, as discussed above, Eagle Forum has not violated the law or the Bylaws. Therefore, the public interest weighs in favor of Eagle Forum, not Plaintiff. Plaintiff has not presented any evidence to the contrary, as is his burden.

# CONCLUSION

Plaintiff is not entitled to a temporary restraining order. First, he is barred by the equitable doctrine of unclean hands and the equitable maxim that "he who seeks equity must do equity." Plaintiff's inequitable conduct, as shown by his breach of his duty of loyalty to Eagle Forum and his use of litigation as a weapon to dissipate Eagle Forum's assets, prevents this Court from providing him with equitable relief.

Additionally, Plaintiff has known about his removal as a director for eight (8) months and has waited until now, four (4) days before a Board meeting, to bring his Second "Emergency" TRO. Plaintiff previously sought such relief, but elected not to pursue his motion. Therefore, Plaintiff is barred from equitable relief by the equitable doctrine of laches.

Finally, Plaintiff's Second "Emergency" TRO cannot succeed on the merits, as he cannot show any of the elements required for this Court to issue a temporary restraining order. Most notably, Plaintiff has **no** probability of success on the merits, as Eagle Forum complied with Illinois law and its Bylaws.

WHEREFORE, Eagle Forum prays this Court deny Plaintiff's Second Emergency Motion for a Temporary Restraining Order and deny Plaintiff's Motion for Preliminary Injunction without prejudice, grant Eagle Forum its costs and attorneys' fees in responding to Plaintiff's motion in an expedited fashion, and for any other and further relief as this Court finds just and proper under the circumstances.

Respectfully submitted,

SmithAmundsen LLC


By: _/s/ James P. Sanders_
    James P. Sanders, #58899MO
    Jessica A. Powers, #63172MO
    Zachary R. McMichael, #68251MO
    120 S. Central Avenue, Suite 700
    St. Louis, MO 63105
    (314) 719-3700
    Fax: (314) 719-3710
    Email:   jsanders@salawus.com
               jpowers@salawus.com
               zmcmichael@salawus.com

*Attorneys for Defendant Eagle Forum*


## **CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that a true and accurate copy of the foregoing was served on all counsel and parties of record on this 13th day of September, 2017, by operation of the court's CM/ECF system.

                                     _/s/ James P. Sanders_