UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

ANDREW L. SCHLAFLY,                    )
                                       )
                Plaintiff,             )
                                       )
                vs.                    )      Cause No. 4:17CV-283JAR
                                       )
EAGLE FORUM, et al.,                   )
                                       )
                Defendants.            )
===========================================================

TEMPORARY RESTRAINING ORDER HEARING

BEFORE THE HONORABLE JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

SEPTEMBER 14, 2017
===========================================================

APPEARANCES

<u>For Plaintiff</u>:
Mr. Andrew L. Schlafly
939 Old Chester Road
Far Hills, NJ 07931


<u>For Defendant</u>:
Mr. James Sanders              Mr. Zachary McMichael
Smith Amundsen LLC             Blitz and Bardgett
120 S. Central Ave.            120 S. Central Ave.
Clayton, MO 63105              Clayton, MO 63105





<u>Reported by</u>:

Lisa M. Paczkowski, CCR, RPR
Official Court Reporter
United States District Court
111 South 10th Street
St. Louis, MO 63102
(314)244-7985

<u>SEPTEMBER 14, 2017</u>

(The proceedings commenced at 9:01 a.m.)

        THE COURT:  We are here and on the record in cause

number 4:17CV-283.  It is Andrew Schlafly verses Eagle Forum

et al.  Let the record reflect -- Andrew Schlafly, you are

here?

        MR. SCHLAFLY:  Yes, your Honor, Andrew Schlafly.

        THE COURT:  I'm sorry, and Mr. Schlafly, you have

seated at the counsel table your brother; is that correct?

        MR. SCHLAFLY:  Yeah, brother John Schlafly.

        THE COURT:  He is seated at the counsel table why?

He is not a party to this action.

        MR. SCHLAFLY:  Yes, your Honor.  He is assisting me

as a paralegal, but if you would rather excuse him, he can

sit in the first row.  It is up to you obviously, your Honor.

        THE COURT:  If that's how you tell me he is acting,

you are an officer of the court.  I will allow him to have a

seat at the counsel table.  And on behalf of the defendants,

it is James Sanders?

        MR. SANDERS:  Yes, your Honor.

        THE COURT:  And Zachary McMichael?

        MR. MCMICHAEL:  Yes, your Honor.

        THE COURT:  We are here today as a result of two

filings that Andrew Schlafly filed on September 11th.  There

was an emergency motion styled "An emergency motion by

plaintiff for temporary retraining order and preliminary injunction." Then there was also a motion for a hearing. So the Court set this on an expedited schedule, because the emergency motion was directed to a proposed meeting of the Board of Eagle Forum which was set for tomorrow, Friday, September 15th at 11:00 a.m.

So again, the Court set the matter for a hearing here today, and an expedited order and an expedited response from defendants. We are here today for the hearing. Mr. Schlafly, I had agreed to give each side 20 minutes. You may proceed.

MR. SCHLAFLY: Thank you, your Honor, and thank you for holding this expedited hearing. I'd like to reserve five minutes for rebuttal.

THE COURT: I'm not going to give you that. So go ahead.

MR. SCHLAFLY: Okay, thank you, your Honor. Here in the courtroom is my brother, John Schlafly, who has also been an allegedly removed director, and Kathleen Sullivan sitting in the first row, who came down from Chicago. She is the third director mentioned in the papers who was allegedly removed by defendant Eagle Forum. So I appreciate Kathleen Sullivan making the trip down here from Chicago.

The other side and the papers that they filed yesterday afternoon concede or never address all of the key

1  points that I need for a temporary retraining order that I'm

2  moving for.

3         THE COURT:  Let me just interrupt you for one

4  moment.  The motion that you had filed it is styled

5  "Emergency motion by plaintiff for a temporary retraining

6  order and preliminary injunction."  The relief you are

7  seeking, the proposed order that you filed, it is all a

8  request for a temporary retraining order.

9         So I want to be very clear what this hearing is

10  here today.  It is a hearing on a request for a temporary

11  retraining order.  So I want that to be very clear that

12  that's how the Court is viewing it.

13         MR. SCHLAFLY:  I appreciate it, your Honor.  I do

14  also request a scheduling of a preliminary injunction

15  hearing.

16         THE COURT:  That's an issue that I'll take up.  I

17  understand.

18         MR. SCHLAFLY:  Thank you, your Honor.  The four

19  Dataphase elements are straightforward, and I don't know that

20  I need to repeat them.  I'd like to start with the

21  irreparable harm and just clear that out of the way.  That

22  could be a stumbling block sometimes on a request for a TRO.

23  I am clearly irreparably harmed by being excluded from the

24  defendant's board hearing, which they admit they are going to

25  have.

1    They don't really dispute any of these key facts in
2  this case.  They are excluding me, and at that board meeting,
3  because it occurs at an annual meeting, they will be
4  nominating candidates, according to the bylaws, they should
5  be nominating candidates who will replace the at large
6  director on the board.

7    I have a right to participate in that process as a
8  board member.  I'm being excluded from that meeting.  That's
9  irreparable harm.  That's a depravation of my right to vote.
10  The case law is clear about that.  They don't dispute that.
11  I have no adequate remedy at law.  They don't dispute that.
12  And that's irreparable harm.

13    What they do argue is they said "Well, I was
14  purportedly removed at a meeting in January," and they say
15  "that's where the harm occurred."  But no, the harm occurs
16  when I'm deprived of my right to participate and vote.  If
17  someone were removed from the voting roles in a public
18  election in February of election year, the harm is when you
19  get to election day, and they are denied the right to vote.
20  So that person can sue before election day, and complain
21  about being deprived of the right to vote.

22    So I just want to address that there is irreparable
23  harm to me, which is one of the key elements of a TRO.  And
24  again, their papers, they don't seriously contest that except
25  they make the argument the harm has already occurred to me.

1    No, the harm will occur tomorrow when I'm excluded from the

2    board meeting, the annual meeting, which is a special board

3    meeting.

4           Now they said they have having board meetings all

5    along. Well, all throughout the year, those board meetings

6    are improper, because under Robert's Rules of Order, which I

7    have here, you are not allowed to have telephonic meetings.

8           What they did at their January meeting, without

9    notice -- and again, they don't deny any of this -- without

10   notice, they snuck in and changed their bylaws and removed

11   Roberts rules of order from the bylaws. That's a huge

12   change. And one of the reasons they did that, is so that

13   they could start having telephonic meetings, telephonic board

14   meeting, redo the whole organization, which Robert's Rules of

15   Order does not allow, and which we never had in the

16   organization.

17          You can't change bylaws without notice. Are bylaws

18   required notice before there is any change to the bylaws?

19   Robert's Rule of Order specifically requires advance notice.

20   I put this in my papers. I put it in my filing yesterday

21   that this was a top priority issue. It doesn't require 25

22   pages of their response to address it. They improperly

23   modified their bylaws, and then removed Robert's Rules of

24   Order. They don't dispute it. There is nothing in their

25   response that addresses it, denies it. There is no denying

it.

That means they have been having improper meetings throughout this year, and what they have been doing is they have been making sweeping changes to the organization without transparency, without the participation of the three of us here as board members where we would blow the whistle on the dissipation of assets. Another thing, they don't deny in their papers. I put in my papers they are dissipating assets by up to $100,000 a month. Money is just flying out of the door.

Your Honor, if we tread water in this case for another year, and there isn't some sort of a TRO or injunctive relief, there may be nothing left. It is just flying out of the door with no accountable. They say in their papers that I'm not even entitled to see the finances.

Well, I guess that's why they tried to kick me off of the board. But as a member, your Honor, I am entitled to see the finances. Well, they put it in their papers, and if I can just comment on their papers while being polite and respectful. If you look at their brief, there is just all of these assertions in their brief. They have no citation to support them, and a lot of them are just false, your Honor.

They did put in an affidavit that they assert that I'm not a member of the organization. Well, your Honor, I renewed my membership in April of this year. I have got the

1    printout here to prove it, and since they put this in their

2    affidavit, I'd like to just submit this.  It is confirmation

3    that I approved my membership.

4              THE COURT:  Do you have it marked as an exhibit?

5              MR. SCHLAFLY:  I can mark it as Plaintiff's

6    Exhibit 1.  I have a copy for the other side.  If I may

7    approach, your Honor.

8              THE COURT:  You may.  Any objection to Exhibit 1?

9              MR. SANDERS:  I'm looking at it real quick, your

10   Honor.

11             MR. SCHLAFLY:  There is a date in the upper

12   left-hand corner that shows when that transaction occurred.

13   So as of April 8th of this year, it is my renewal of my

14   membership paid in.  It is astounding how they put in an

15   affidavit or declaration an assertion that I'm not a member.

16   That I haven't paid anything in 17 years.

17             THE COURT:  Any objection to Exhibit 1?

18             MR. SANDERS:  We would object to Exhibit 1, your

19   Honor.  The records of Eagle Forum indicate that there is

20   actually no record of this.  It is something we investigated.

21   I mean, we would object as to foundation.  I don't think

22   there is any way to authenticate this document.

23             MR. SCHLAFLY:  Your Honor.

24             THE COURT:  There is no way to authenticate the

25   document.  It appears to be a computer printout.  In any

1    event, I'll take it subject to the objection.

2            MR. SANDERS:   Your Honor, I would also add that we

3    did investigate whether Mr. Schlafly attempted to secure a

4    membership.   The indication that we have -- that's why we put

5    it not in the affidavit, but the declaration of Anne Cori.

6    These funds were returned to him.

7            THE COURT:   Okay.   In any event, I'll take it

8    subject to the objection.

9            MR. SCHLAFLY:   Your Honor, on a similar note, I'd

10   like to submit one.   I did last year too on April 18th of

11   last year.   I don't know if they are going to assert it.

12   They tried to return those too.

13           THE COURT:   You need to mark it as an exhibit.

14           MR. SCHLAFLY:   I have marked it, your Honor.

15           THE COURT:   Okay.   I'm assuming you have the same

16   objection.

17           MR. SANDERS:   We do, your Honor.

18           THE COURT:   I'll take it subject to the objection.

19           MR. SCHLAFLY:   Your Honor, if I can comment on that

20   though.   In their submission, and you certainly handle more

21   trials than I do, I defer to your expertise.   There is almost

22   nothing in their submission that is admissible evidence.   And

23   even on this point for an attorney to say he investigated.

24   That's not admissible.   The declaration --

25           THE COURT:   Mr. Schlafly, let me remind you, I'm

1  giving you 20 minutes.  You are ten minutes into your

2  20 minutes.  We are talking about the Dataphase factors.  You

3  discussed a little bit about irreparable harm.  Do you want

4  to tell me anything else about any of the other Dataphase

5  factors.

6          MR. SCHLAFLY:  I do, your Honor.  If you would

7  allow me to just finish that point.  They have an office

8  worker that handles the website.  The attorney doesn't handle

9  the database.  Ms. Corey doesn't handle the database.  On the

10 Dataphase factors, I talked about irreparable harm to me.  No

11 adequate remedy at law.  I'm being deprived of my right to

12 work.

13         Harm to them is another factor.  They don't put any

14 evidence of any harm to them.  There is no evidence.  There

15 is nothing.  There isn't any harm to them.  Public interest,

16 the other sort of easy factor, it is nonprofit group.  It is

17 a membership group.  It is a nonpartisan group.  They have to

18 comply with the bylaws.  So the public interest weighs in

19 favor of complying and not removing Robert's Rules of Order

20 from the bylaws without notice.  Public interest is in favor

21 of issuing the TRO.

22         The final factor, which is the probable success on

23 the merits; and on that, they do not deny it.  Again they

24 excluded proxy voting from their January meeting, which is

25 improper under Illinois law.  They essentially concede that

1  in their paper they cite the Illinois statute.  I can point

2  to it right here in their papers, page 16 of their papers.

3           THE COURT:  Do you agree Illinois law applies to

4  Eagle Forum.

5           MR. SCHLAFLY:  I'm fine with that.  What they did

6  was improper in Illinois or Missouri law.  But let's go with

7  Illinois law.  They quote right in the papers that in the

8  case of "A corporation with members entitled to vote for

9  directors --" which is what we are dealing with here, "it

10 requires affirmative vote of two-thirds of the votes present

11 voting either in person or by proxy."  That's a lot of proxy

12 voting.  They expressly prohibited proxy voting.  That's a

13 violation of Illinois statute.  That's improper.  They don't

14 offer any explanation.

15          So the removal at the meeting whereupon they then

16 replace the other directors, and they gave no notice of any

17 replacement.  It was improper.  So we have a probability of

18 success on the merits.

19          They also modified the bylaws, which is completely

20 improper.  We have a probability of success on that.  What

21 they did was sweeping changes to the organization without

22 notice, and that's not what you are allowed to do.  They are

23 acting like directors.  The group of them.  They will, as you

24 will see as we have seen from prior minutes, and this is what

25 is extraordinary about this case, your Honor.  I'll take a

minute or two to address this. They submitted no minutes in
their papers, no minutes; and again, how can they make
assertions when they don't submit the minutes of what
happened. They don't even provide any evidence of what they
actually did at the January meeting. They don't submit the
minutes from the meetings. They say the minutes exist.

What they did was they put in a declaration of
Ms. Corey, who was not the secretary, and she said she
reviewed the minutes, and then she gives her opinion of the
minutes. That's not proper. That's not admissible. They
need to submit the minutes, and I suggest, your Honor, if
they had just submitted the minutes through the January
meeting, we would see clearly how improper that meeting was.
But they have withheld that from this proceeding and from
this Court; and I submit, your Honor, they cannot come in
here and argue they have a probability of success on the
merits in holding a legitimate January meeting when they
refuse to submit the minutes for the meeting.

They have no evidence that the meeting was
legitimate. They have no evidence they had six votes. They
claim that I was removed by six votes, but they don't produce
any evidence. They don't produce the minutes, and I'm
wondering if someone didn't show up on their side, which is
quite possible, and they are concealing that from the Court.
If they only had five votes, and just one person shows up on

1    their side, then it is clearly improper. They didn't have

2    the votes to do it. And they admit that I was removed, so

3    they admit all of my points. So I don't need evidence of it.

4    But then they simply assert without any evidentiary basis

5    that they had the votes to remove me. That's improper. Your

6    Honor, they don't have probable success of succeeding on

7    merits.

8           They made other false assertions in their papers.

9    I don't have rebuttal time. They may stand up here and

10   repeat it. So I need to address it right now, which is they

11   claim on page 13, they said flat out that Madison County "Has

12   already determined that the January 28th meeting was proper."

13   Completely false. Completely false. There was no

14   determination by the Madison County Court that the

15   January 28th meeting was improper.

16          There was a hearing in Madison County before the

17   meeting, before anybody knew in court what they were going to

18   try to do, and the hearing before it was a request for an

19   emergency TRO based on another TRO that was in place, and

20   there was simply a one sentence order that was issued by the

21   Madison County Court which I have, which simply says, "The

22   emergency motion to enforce a prior TRO to restrain and bar

23   the purported January 28th meeting was called, heard, and

24   denied.

25          So simply denial of a TRO before the meeting to

1   enjoin, that's not upholding legitimacy of the meeting.

2   Nobody knew what was going to happen, and what they did was a

3   sweeping change to the organization, changed the bylaws,

4   completely improper, removed us, probably without sufficient

5   votes, and there is no evidence they had enough votes, six

6   votes. They didn't give notice under Illinois law. They

7   denied proxy voting, and if I can just -- if you indulge me

8   just for a little levity here.

9          They come in with this letter of one of the

10  directors who was on our side claiming that she resigned and

11  that -- using that basis to try to get their two-thirds.

12  They submit this letter to the Court which is hearsay saying

13  that she resigned. They had someone visit her home, an

14  elderly woman, supposedly to write a handwritten letter of

15  resignation. If I can try a little Perry Mason moment here.

16  They spell her name LaNeil Spivy, and they spell LaNeil as

17  two words, "La Neil". That's her first name. It is one

18  word, and they have her signature here, and they say "La

19  Neil" is two words. LaNeil is her first name.

20         It is hearsay anyway. It is not something we

21  depend on, because the reality was the notice was improper.

22  It barred proxy voting, and it excluded her, because she

23  can't travel. I couldn't vote either, because I had a

24  conflicting meeting at the time. I had to vote by proxy.

25  They barred proxy voting. They changed the bylaws, and there

is no evidence they had enough votes to remove us, and all of
this roles up into a dissipation of assets where money is
flying out the door with no transparency whatsoever.  I'm
being disenfranchised both as a director and a member.

        The meeting is tomorrow, and I urge your Honor to
grant a temporary retraining order, and put the brakes on
this thing, and start to compel some compliance with the
bylaws which are there for a good reason to prevent a small
group that probably has a side deal among themselves.  I put
that in my papers, and they didn't dispute that.  And it may
show up in some of these minute meetings how they have some
deal among themselves to do certain things, which is
improper, and that would result in their removal if that came
out.  And what they are doing is they are sending money out
the door.

        I urge your Honor to grant a TRO just to put the
brakes on it.  There is no harm to them.  It would stop
irreparable harm to me.  It would be in the public interest,
and there is a probable success on the merits.  Thank you,
your Honor.

        THE COURT:  Okay.  Mr. Sanders, Mr. McMichael?

        MR. SANDERS:  Thank you, your Honor.  Sorry if I
use a stopwatch, your Honor.

        THE COURT:  That's fine.

        MR. SANDERS:  Put simply, your Honor, plaintiff is

not entitled to a TRO.  This is further procedural
gamesmanship by the plaintiff.  It is an attempt to get a
third, fourth, or fifth bite at the apple to stop or restart
a board meeting which occurred back in January.

Before we get to the elements under Dataphase for
the TRO, I would raise two issues:  Unclean hands and laches.
Those are both well-briefed, your Honor, and I will go
through them quickly.

This is not the first time I would add that you
have dealt with a TRO situation like this, or that this Court
has.  You previously ruled on one in a similar fashion.  You
also denied one in this case last Friday by order.

He portrays this as an emergency.  What he really
wants to do is relitigate the January 28th meeting.
Plaintiff claims that tomorrow's meeting will cause him harm.
He has been plotting for over 18 months to destroy Eagle
Forum.  We will return to point when we address unclean
hands.

The actions by the plaintiff, his brother, the
other minorities in this case has been to further those
efforts to destroy Eagle Forum throughout the country.  There
is pending litigation in New Jersey over insurance proceeds.
There is an action in the Eastern District of Missouri
involving the Phyllis Schlafly irrevocable trust.  The matter
that's waiting remand in Madison County.  The TRO was denied

1    there.   So I would point the Court to all of those.

2              What plaintiff is really trying to do is put the

3    meeting tomorrow is challenge his removal back in January,

4    and he alluded to a lot of that.   And so we are going to go

5    through those points, because they relate to unclean hands,

6    and they relate to laches.   They also relate to the elements

7    under Dataphase.   The procedural background that you may be

8    familiar with, your Honor, is that this particular case was

9    removed from Missouri State Court in January of 2017.

10             On January 26, 2017, Judge Fleissig held a

11   telephone conference.   This was for the first TRO to prevent

12   that January 28th board meeting.   During that telephone

13   conference, the plaintiff admitted that a similar TRO, in

14   fact, almost the exact same TRO is being sought in Madison

15   County.   That hearing was set for the 27th.

16             The plaintiff voluntarily at that point, plaintiff,

17   withdrew the TRO motion from oral arguments because Judge

18   Fleissig indicated that two parallel TROs going on would be a

19   bad idea, and it may be a bad result for him in this court.

20             A motion was then held in Madison County over the

21   very same issue, TRO.   It was denied.   It was denied, because

22   Judge Ruth in that case focused on the unclean hands of

23   minority in this case.   John Schlafly, who is sitting at the

24   counsel table, as well as Mr. Martin, were given the

25   opportunity to provide testimony to show why the minority

1   group did not have unclean hands.  They took a lunch break,

2   and they declined to testify.  The Court rejected that.  Same

3   type of gamesmanship comes forward to today.

4           I'm sure you have read the documents.  There was a

5   split of the board back in April.  Then there is a plot -- a

6   little plot by Mr. Schlafly, both of the Schlaflys are

7   sitting at the table.  It is evidenced in the e-mail, that's

8   Exhibit C, to destroy Eagle Forum.  They formed a competing

9   501C organization.  The goal of all minority members, the

10  ones who are eventually removed, those members acted against

11  Eagle Forum.  They had a fiduciary duty to Eagle Forum, and

12  they acted against it.  All of this goes to unclean hands.

13          In September of 2016, Phyllis Schlafly died,

14  leaving the first Board vacancy.  In early January, LaNeil

15  Spivy wrote to Eunie Smith, President of Eagle Forum.  She

16  asked her to resign.  That was then documented.  Those are

17  Exhibits E and F.

18          In January of 2017, on January 6th, the Board sent

19  notice to all directors of their intent to remove the

20  plaintiff, John Schlafly, as well as Kathleen Sullivan, who

21  is sitting in the gallery, due to their actions against Eagle

22  Forum, breaches of fiduciary duty.  They were also given the

23  opportunity to resign.  They did not.

24          During the January 28th meeting, there is a board

25  vote six to zero to remove the minority.  This element goes

1  to laches.  This happened back in January of 2017.  Andy

2  Schlafly -- now it is unclear after his arguments earlier

3  whether he did receive proper notice.  I refer you to Exhibit

4  G and Exhibit H, indication that the notice was sent to him,

5  and that that notice went to the same location as he

6  currently uses for the filings in this Court.

7           He knew about the meeting.  Actually stated it a

8  couple minutes ago.  So any notion that he didn't receive

9  proper notice is contrary to his own arguments to this Court.

10  In fact, counsel for minority, a gentleman named Ean Northum,

11  who appeared by phone in another case before you pro hac vice

12  months ago, also dropped off resolutions that these three

13  members purported to pass on the very same day that Eagle

14  Forum held a board meeting, January 28, 2017.

15          There were further attempts to cripple Eagle

16  Forum's board.  I'll refer you to what's going on in New

17  Jersey, which relates to unclean hands, Exhibits J and K.

18          THE COURT:  So the record is clear, you had

19  submitted a binder with these exhibits.  You have given Mr.

20  Schlafly, Andrew Schlafly, a copy of the exhibits; is that

21  correct?

22          MR. SCHLAFLY:  Yes, your Honor.

23          MR. SANDERS:  They were filed online.  Here is a

24  courtesy copy.

25          THE COURT:  They were attached to your filings?

1          MR. SANDERS:  They absolutely were, your Honor.

2          THE COURT:  Thank you.

3          MR. SANDERS:  In the New Jersey situation,

4    $3.4 million of two insurance policies on Phyllis Schlafly

5    from John Hancock and Lincoln Financial that were paid for by

6    Eagle Forum where Eagle Forum was the written beneficiary.

7    In that case, Mr. Schlafly has tied up those proceeds

8    initially in New Jersey State Court.  It has been removed to

9    New Jersey U.S. District Court.

10         In those situations, and that would be Exhibits J,

11   K, L, M, N, and O, as well as P.  In those situations, he

12   attempted to tie up the proceeds that were due to Eagle

13   Forum.  So what he initially did was he filed against the two

14   insurance companies claiming that those proceeds should be

15   payable to the members of Eagle Forum as opposed to Eagle

16   Forum itself, the named beneficiary.

17         Then later, as the insurance company interpled the

18   funds, as the insurance companies attempted to investigate

19   the case, eventually brought in Eagle Forum, as well as

20   others, Mr. Schlafly steps back and abandons his claims.  He

21   actually sends a letter to the Court that says, "I won't

22   oppose the motion to dismiss, and I won't oppose the award of

23   attorney's fees."

24         This refers, and we believe that the evidence

25   referring back to his initial e-mails, which is Exhibit C,

1  where he talks about his attempts and his plan, along with

2  his brother, to destroy Eagle Forum.  It is an attempt to

3  bleed these funds in the form of attorney's fees as well as

4  costs in the New Jersey case.

5          Worst of all, we recently discovered, I believe

6  that's why he presented exhibits here today, Mr. Schlafly in

7  fact is not a member of Eagle Forum.  The last time he

8  actually paid dues, and they were accepted by Eagle Forum,

9  was back in 2008.  That's listed in the declaration of Anne

10  Cori, Anne Schlafly-Cori.

11         The board has met every month since January.  That

12  would be Exhibit Q.  I would also remind the Court that it is

13  entirely the plaintiff's burden to prove all elements of the

14  TRO.  That's the Spann case where he attempted to shift the

15  burden, and somehow claim that there was an improper vote,

16  force us to prove that there was.  It is improper.  And a

17  declaration, which is exactly what he submitted, should

18  support that vote.

19         The Board has elected new directors, because there

20  were vacancies due to resignation and deaths.  The Board then

21  started to recover.  It has met every single month.  On

22  Friday, it will hold its signature event.  So I would go into

23  the factors now for --

24         THE COURT:  Let me interrupt you for a minute.  So

25  I understand, the Board met on January 28th.  In terms of the

1    monthly meetings, was there a schedule established for the

2    monthly meetings?  What kind of notice was given.

3              MR.  SANDERS:   Notice was given to all of the

4    members, the existing members of the Board.

5              THE COURT:   Okay.

6              MR.  SANDERS:   Proper under Illinois law.  I think

7    there is a question as to whether it is 20 days or 10 days.

8    It was -- they were always given 20 days notice.  They also

9    amended the bylaws.  I wouldn't dispute the fact that they

10   amended the bylaws on January 28th.

11             THE COURT:   I understand that.  I just want to

12   understand how the meetings were set in terms of the

13   September meeting, which is tomorrow, scheduled for tomorrow,

14   is that an annual meeting?

15             MR.  SANDERS:   It is an annual meeting.

16             THE COURT:   How is that set, what's the procedure

17   for setting it?

18             MR.  SANDERS:   Notice is -- well, first of all, it

19   was discussed months ago as to when this was going to occur

20   during the other Board meetings, your Honor, because they had

21   to figure out when they were going to hold Eagle counsel.  It

22   is typically held in September.  So they discussed this at a

23   round table a couple of dates, and eventually, Eunie Smith

24   sent out a notice to all of the voting directors.

25             THE COURT:   In terms of when that meeting was set

1  for tomorrow, do you know when that occurred?

2       MR. SANDERS:  Well, I guess I would say that it was

3  set, and the directors were aware of it at least as far back

4  as June, but notice was sent out under the appropriate notice

5  provisions of the bylaws in Illinois law to those directors,

6  not sent to anyone else.

7       THE COURT:  Okay.  That's what I wanted to know,

8  thank you.

9       MR. SANDERS:  He who seeks equity must do equity.

10 The Court is well aware that equitable relief is requested

11 here.  Anyone who comes and asks for equitable relief must

12 come with clean hands.

13      In this situation, the breach of fiduciary duty by

14 the plaintiff is in and of itself -- and I noted some of

15 those, and I'm going to go back through them very quickly.

16 The majority of the directors attempted to remove Ed Martin.

17 They also attempted to remove the other directors due to

18 their competing organization that they formed.  Plaintiff

19 attempted to use litigation to drain out the assets of Eagle

20 Forum and prevent them from operating.

21      I would note the pending litigation in multiple

22 courts, the New Jersey action in itself.  I would cite to

23 Missouri, Illinois, and New Jersey law that a corporation

24 does not belong to its members.  It is owned and operated by

25 the directors themselves.  Under these facts, as well as the

overall behavior in this court and other courts by Mr.
Schlafly, his attempts to destroy Eagle Forum from within, I
believe that he suffers from unclean hands, and the Court
should deny his motion based on that.

If the Court doesn't find for unclean hands, I
would refer to laches. In this situation, there was a first
emergency TRO was in early January. It was denied by the
Madison County Court. It was abandoned in this Court by the
plaintiff.

Now, we are sitting here in late September. It has
been over eight months. Plenty of time to challenge that. I
assume that Mr. Schlafly had the idea that at some point in
the future, there was going to be a Board meeting. The
simple fact that he waited so long, this delay would again
cause him to not be able to ask for the relief that he is
seeking.

Third, I would move to the TRO itself. Dataphase,
the Court is well aware of the elements. I'm not going to
relist them, but rather cite the evidence that we believe
supports the rejection of this TRO. Plaintiff can't --
cannot demonstrate ultimate success on the merits in this
case. Much was cited as to the governing law. Mr. Schlafly
now admits that it is Illinois. The Internal Affairs
Doctrine would determine it would be in Illinois, but it
seems that he has admitted that point.

1          Eagle Forum is governed by the Illinois

2   Non-For-Profit Act.  This is one of the reasons we are in

3   Madison County.  Requirements under Illinois law that are

4   listed on page ten of our pleadings talks about what you need

5   in terms of resignation of directors, it was complied with.

6   In terms of the notice, it was complied with.  As to notice,

7   there is no dispute.

8          So in Illinois, the Eagle Forum bylaws are silent

9   as to the removal of directors.  So you look to Illinois law

10  to figure out what that was.  It was complied with.  That's

11  also cited in our papers.

12         Eagle Forum provided written notice as to

13  irreparable harm.  This harm stems from the January 28th

14  meeting.  There will be no harm tomorrow.  That's if Mr.

15  Schlafly can cite the fact that he can no longer claim that

16  he is a director of Eagle Forum.  I can no longer claim that

17  I was previously employed elsewhere.  That's what happens

18  when you are removed.  When you quit.  When you are fired.

19  It is not the basis for irreparable harm.

20         THE COURT:  Let me ask you about the -- again,

21  because this meeting is an annual meeting, what's different

22  about it than any other meeting.

23         MR. SANDERS:  Simply that it's -- well, several

24  things.  One, it is an annual meeting and is specified and

25  required by the bylaws, your Honor.  Second, what is going to

1   happen at the annual meeting is an odd numbered years, an at

2   large director, one of the directors on the Board, not all of

3   the board members, is a panel is proposed.  Three members are

4   then put up for vote.  The members out in Eagle Forum, the

5   various numbers of people who are out there, then submit who

6   is voted for.  So that nomination process will occur

7   tomorrow.  In terms of that nomination--

8           THE COURT:  Just so that I understand, all that

9   occurs is there are three nominees?

10          MR. SANDERS:  Correct.

11          THE COURT:  Who are then voted on by the members.

12          MR. SANDERS:  Well, that's what the bylaws require.

13  When it was previously run by John Schlafly, they were not

14  following the bylaws.  What they did was he would --

15          THE COURT:  I don't necessarily need to understand.

16  The issue for me today is what's going to happen tomorrow.

17          MR. SANDERS:  There is a nomination, and the

18  membership will vote.  Something that has occurred in the

19  past and will occur in the future.  There is no ability for

20  Board of Director's members to resist this.  They are

21  duty-bound by the bylaws to specifically carry out what I'll

22  call a "mysterial" procedure.

23          THE COURT:  Okay.  Anything else about the meeting

24  tomorrow?

25          MR. SANDERS:  No.  I wouldn't say that anything

else is going on at the meeting tomorrow, your Honor.  I
think I'll also --

THE COURT:  You indicated that the Board has been
meeting monthly.  So each month since the January 28th
meeting, the Board has met; is that correct?

MR.  SANDERS:  It is.  And in the declaration --

THE COURT:  There was a February meeting, a March
meeting, an April meeting, and I don't need to go through the
months; is that correct?

MR.  SANDERS:  Exhibit Q, your Honor, is the
declaration.

THE COURT:  That's the declaration.  I just want
you to affirm that that's correct.

MR.  SANDERS:  That's correct, your Honor.

THE COURT:  Okay.

MR.  SANDERS:  I apologize.  There was not a
February, because the Board meeting occurred in late January.
So there was a March, April, May, June, July, and August
meeting of the Board.

THE COURT:  Okay.

MR.  SANDERS:  We would ask that this be denied.
Our prayer speaks for itself.  I would also refer to the
Court to page one of our filings.  There is a footnote at the
bottom of page one.  It is also laid out very clearly in the
prayer.  The specific type of denial that we would request

1   from this Court.

2          THE COURT:   Okay.

3          MR. SANDERS:   Thank you very much, your Honor.

4          THE COURT:   Okay.   Mr. Schlafly, I know I had told

5   you I was not going to allow you any time for rebuttal.

6   There have been a number of exhibits that have been -- that

7   were attached to the filing that are here.   Do you have an

8   objection other than what you previously essentially stated

9   some objections.

10          MR. SCHLAFLY:   And I do object to that declaration

11   by Ms. Corey.

12          THE COURT:   You are talking about Exhibit Q?

13          MR. SCHLAFLY:   Yeah, and it is all hearsay.   She

14   doesn't have any personal knowledge of it.   And just two very

15   brief factual points to be raised --

16          THE COURT:   Let me just ask you a question, how

17   could she -- she is a member of the Board.   She continues to

18   be.   In part, the declaration relates to when the Board met.

19   How would she not have personal knowledge?

20          MR. SCHLAFLY:   Well, she is not the secretary.

21          THE COURT:   But if she attends the meetings,

22   wouldn't she have personal knowledge of that?

23          MR. SCHLAFLY:   I guess she would have personal

24   knowledge of attending the meetings, not whether the minutes

25   were proper.   Not whether what happened there was proper.

1    The bylaws were followed.  She certainly has no personal

2    knowledge about membership.  She doesn't manage the

3    computers.  I would like extra time to real briefly.  There

4    is two new points to raise.

5            He says it is just minutes theory what they are

6    doing tomorrow.  No, tomorrow they plan to nominate three

7    candidates for the at large directorship position.

8            THE COURT:  Those three candidates have to be voted

9    on by the members.

10           MR. SCHLAFLY:  Right, but it is a nomination of

11   those people.  It is like picking a judge.  It is not to be

12   confirmed by the Senate, but that is an election process.  It

13   is huge.  I'm being excluding from that.

14           The second point is he claims unclean hands.  There

15   is no evidence of unclean hands, your Honor.  If he says my

16   filing of the lawsuit gives me unclean hands, there is no

17   evidence whatsoever of unclean hands.  Many people belong to

18   different organizations.  They have a director that belongs

19   to the Republican National Committee.

20           THE COURT:  Let me just ask you about your conduct

21   in this case.  You filed a motion for a temporary retraining

22   order --

23           MR. SCHLAFLY:  Yes.

24           THE COURT:  -- in this case.  The case was

25   originally assigned to Judge Fleissig, who is across the hall

1  from me.  Judge Fleissig adjusted her schedule, set a

2  hearing.  As I understand it, there was then a phone call

3  with counsel.  You had filed an identical motion in State

4  Court in Madison County.

5          MR. SCHLAFLY:  It wasn't me.  I'm not in the State

6  Court action.

7          THE COURT:  It was a motion seeking identical

8  relief, and do you agree with that; is that right?

9          MR. SCHLAFLY:  Other parties -- and once they did

10  that, then I pulled back here.  I wasn't trying to forum

11  shop.  I filed mine before the --

12          THE COURT:  But you can understand why the Court

13  would see that as perhaps forum shopping.

14          MR. SCHLAFLY:  Well, it wasn't me -- not really,

15  because the meeting was here in St. Louis County.  I filed

16  here to enjoin the meeting here.  We had a hearing set in

17  State Court.  They removed the case on the eve of the hearing

18  to come into Federal Court, and I just got overwhelmed.

19          THE COURT:  They timely removed the case to Federal

20  Court.  Judge Fleissig was in the process of setting it for a

21  hearing.  There was this phone call where you indicated there

22  was no need for a hearing, and withdrew the motion; and in

23  fact, actually, it has been mentioned here today that I

24  issued an order on September 8th denying the TRO, and I did

25  that because there was nothing actually in the record on the

1  docket sheet indicating that the previous TRO had been

2  withdrawn.  So that's why I wanted something to reflect that.

3        MR. SCHLAFLY:  Right, and that was proper.  It

4  became moot.  What happened was --

5        THE COURT:  I just want to make sure that the

6  record is clear.  So you filed that.  Then you withdrew it.

7  And then you are filing this motion for emergency temporary

8  retraining order, and it appears to me that what you are

9  doing is wanting to relitigate everything that occurred at

10  the January meeting, and that's all that this is.

11        MR. SCHLAFLY:  No, your Honor, because we didn't

12  know what was going to occur at the January meeting.  They

13  concealed that from us.

14        THE COURT:  But all of these things that you are

15  saying occurred, occurred on January 28th.  So you could have

16  filed whatever you wanted to file on January 29th or any day

17  thereafter.

18        MR. SCHLAFLY:  That's incorrect, your Honor.  I was

19  never informed of what happened.  They didn't disclose it to

20  me.  I just learned last night at 5 p.m. what they were

21  doing.  They haven't disclosed this to any members.

22  Membership is overwhelmingly against them, which they haven't

23  disputed.

24        What happened is I filed in St. Louis County to

25  enjoin the January 28th meeting that was going to happen in

St. Louis County. They removed it to Federal Court. It then

went to Judge Fleissig. Then she transferred it here. But

then what happened was a hearing got scheduled in Madison

County, and there was never any indication whether Madison

County was going to schedule a TRO hearing.

So what happened was the news came over to this

Madison County scheduling, the TRO hearing, and then I pulled

back precisely to avoid forum shopping. I said, "Look, they

scheduled a hearing over there on Friday." It was a very

short timeframe. And then -- but this was all before the

meeting, and we had no idea that they were going to remove

Robert's Rules of Order from their bylaws. That they were

going to start holding monthly meetings. They never had done

that before. They never told us they were going to do it.

So when he talks about disclosures, he is not

talking about disclosures to us. He is talking about

disclosures to the little group that apparently has a side

deal among themselves of what to do with the money. I'm in

favor of Eagle Forum. I'm trying to save the organization.

It is shedding money, huge amounts of money. It will be

dissolved within a year. I'm trying to save it. So are the

other directors here. Thank you, your Honor.

THE COURT: Because this meeting is set for

tomorrow morning at 11 o'clock, it is the Court's view that

it is important for the Court to rule on this matter at this

1    point in time. I want to make sure that there is clarity,

2    and that's why I adjusted my schedule to insure that we had a

3    meeting in advance of the meeting scheduled for tomorrow at

4    11:00 a.m.

5           The Court has had an opportunity to review the

6    records, review the filings in this case. The Court has

7    considered the arguments of defense counsel with regard to

8    laches and unclear hands, and I'll address those briefly in

9    just a moment.

10          In considering whether or not a temporary

11    retraining order is issued, the Court is required to consider

12    the four Dataphase factors. Those factors are the threat of

13    irreparable harm to the movants. The balance between the

14    threat of harm to the movants, and the injury that granting

15    the TRO will inflict on other parties to the litigation. The

16    probability that the movants will succeed on the merits of

17    the underlying action; and fourth is the public interest.

18          In terms of likelihood of success on the merits,

19    again, in reaching that determination, this is certainly very

20    early on in this litigation, but it would appear to the

21    Court, based on everything that has been filed, again that

22    Eagle Forum's operations are governed by Illinois law. It

23    appears to the Court that Eagle Forum complied with the

24    requirements of Illinois law, and appears to have complied

25    with the requirements of its bylaws in holding the

1    January 28, 2017 meeting.

2            It appears to the Court that proper notice was

3    given of the intent to remove the directors that were

4    removed.  It appears to the Court that that was done again in

5    compliance with the bylaws and in compliance with Illinois

6    law.  As a result, the Court believes that plaintiff, Andrew

7    Schlafly, cannot show a likelihood of success on the merits.

8            With regard to the issue of irreparable harm, it

9    appears to the Court that to the extent that Andrew Schlafly

10   is alleging any irreparable harm, that irreparable harm

11   occurred when he and the other directors were removed, and

12   that occurred on January 28th.  This motion appears to

13   largely seek to relitigate issues related to the holding of

14   that January 28th meeting, and it seems to the Court to be

15   disingenuous when Andrew Schlafly states that he did not know

16   that these actions had been taken by the Board.

17           Again, to the extent that there was irreparable

18   harm, it all occurred at the January 28th meeting, and

19   everything that's been said here today is consistent with

20   that.  It seems to me that the plaintiff has referenced more

21   about what happened at that meeting than anything about what

22   would happen at the meeting tomorrow, and it does not appear

23   to the Court that the plaintiff has prevailed in showing that

24   there would be irreparable harm.

25           Again, in terms of balancing of the harms, it

appears again to the Court that to the extent that Andrew

Schlafly has suffered any harm, it was from the January 28th

meeting, and not from any meeting tomorrow.  For the Court to

enjoin Eagle Forum from proceeding with the meeting tomorrow

would arguably cause significant harm to Eagle Forum.  So

again, plaintiff cannot prevail on that Dataphase factor of

the balancing of harms.

In terms of the public interest, I don't really

know exactly where the public interest lies as it relates to

this issue.  I know that there is interest on both sides of

the issue.  It is at some level, I suppose, unfortunate that

this is all occurring this way.  But in any event, the

plaintiff has not prevailed in showing any of the four

Dataphase factors.  For that reason, the Court is going to

deny the temporary retraining order, deny the motion for

temporary retraining order.

To the extent that there was any request, and I

don't actually think there was, for a preliminary injunction,

I'll deny that without prejudice.  I understand you want a

scheduling order.  We are going to have to have a scheduling

order put in place, and the Court will take that up at a

later point in time.

It does appear to the Court, that looking at the

pattern of litigation that has occurred -- and Mr. Schlafly,

I know you are saying that you weren't a party to the Madison

1    County litigation.  It is clear that there are two factions,

2    individuals, related entities, who are involved in a pattern

3    of litigation.  The pattern of litigation appears to have

4    started in State Court in Illinois.  There was then a filing

5    in Federal Court in Illinois.  There have been now filings in

6    State Court, and then removed to Federal Court, Federal Court

7    here in Missouri.  There now appears to be litigation in New

8    Jersey.

9          Again, all of these lawsuits appear to be related

10   litigation by two factions, and related entities, and when I

11   look at the pattern of litigation, including the filing of

12   the motion for temporary retraining order that occurred at

13   the beginning of this case with an identical motion for a

14   temporary retraining order being filed over in State Court,

15   the withdrawal of the motion for temporary retraining order

16   here, the filings here, it does appear to the Court that

17   largely this filing that occurred on September 11th was the

18   product of an attempt to harass -- I don't know any other

19   purpose for it.  I don't see any other purpose for it, and

20   that just is the way that it appears to the Court, and it

21   appears to be, yes, some level of gamesmanship, some level of

22   forum shopping; but in any event, a level of harassment to

23   simply tie up Eagle Forum and its present directors in

24   different litigation.  And for that reason, the Court

25   believes that defendant's request for attorney's fees and

1    costs is appropriate.

2         I'm going to direct here today that you submit

3    within seven days your fees and costs associated with

4    defending this emergency motion for temporary retraining

5    order and request for a hearing. I'll give you, Mr.

6    Schlafly, three days to file any objection to that.

7         At that time, I'll issue an order to supplement the

8    findings here today in that order. But again, the record

9    will reflect that the motion for temporary retraining order

10   that was filed on September 11th is hereby denied.

11        To the extent that there was a request for a

12   preliminary injunction, it will be denied without prejudice.

13   We can -- the Court will enter an order with regard to

14   scheduling. I'll enter a written order to reflect this.

15   Anything further for the record, Mr. Schlafly?

16        MR. SCHLAFLY: Your Honor, I'd like to object to

17   the award of attorney's fees. I mean, your ruling was issued

18   on Friday, September 8th. They were having this Board

19   meeting that's coming up on this Friday. I reacted based on

20   your ruling last Friday. If I had sat on my rights, it would

21   have been accused of laches. He has already accused me of

22   doing. It was a good-faith filing based on your Honor's

23   ruling.

24        THE COURT: I understand. Anything further,

25   counsel?

1            MR. SANDERS:   Your Honor, I would request that you

2     order that the plaintiff's post a bond, with the almost no

3     likelihood of success going forward in this case, Eagle Forum

4     will be forced to expend additional attorney's fees if he

5     attempts to schedule a preliminary injunction.   We would like

6     the right to submit something requesting a bond.

7            THE COURT:   You can certainly submit something if

8     you want to.   I don't, at this point, see a basis or a need

9     to require plaintiff to post a bond.   Essentially, you are

10    asking me to order them to post a bond, assuming there is

11    going to be future misconduct essentially, or future conduct

12    that would justify the award of attorney's fees.

13           I'm hopeful that with the Court's order here today,

14    that that won't continue to occur.   In any event, I'm not

15    inclined to do that, but you can -- if you want to include

16    that as part of your filing, then do so within seven days.

17           MR. SANDERS:   We will, your Honor.   Thank you very

18    much.

19           THE COURT:   The Court will enter a written order.

20    That will conclude the hearing here today.   Thank you.

21    (The proceedings concluded at 10:00 a.m.)

22

23

24

25

C E R T I F I C A T E

            I, Lisa M. Paczkowski, Registered Professional

Reporter, hereby certify that I am a duly appointed Official

Court Reporter of the United States District Court for the

Eastern District of Missouri.

            I further certify that the foregoing is a true and

accurate transcript of the proceedings held in the

above-entitled case and that said transcript is a true and

correct transcription of my stenographic notes.

            I further certify that this transcript contains

pages 1 through 38 inclusive and that this reporter takes no

responsibility for missing or damaged pages of this

transcript when same transcript is copied by any party other

than this reporter.

            Dated St. Louis, Missouri, this 19th day of

September, 2017.


------------------------------------------
/s/Lisa M. Paczkowski
Lisa M. Paczkowski, CCR, CSR, RPR
Official Court Reporter