# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
## St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

July 29, 2020

Mr. Andrew Layton Schlafly
AAPS GENERAL COUNSEL
939 Old Chester Road
Far Hills, NJ  07931-0000

     RE:  19-2174  Andrew Schlafly v. Eagle Forum, et al

Dear Counsel:

     The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

     Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

     Michael E. Gans
     Clerk of Court

AMT

Enclosure(s)

cc:    Mr. Eric David Block
       Mr. John A. Bouhasin
       Mr. Patrick A. Bousquet
       Mr. Daniel R. Coffman
       Mr. Daniel Joseph Emerson
       Mr. Arthur David Gregg
       Mr. Richard David Lageson
       Mr. Gregory J. Linhares
       Mr. Zachary R. McMichael
       Mr. James P. Sanders
       Mr. Erik O. Solverud

     District Court/Agency Case Number(s):  4:17-cv-00283-JAR

# United States Court of Appeals
### For The Eighth Circuit
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

July 29, 2020

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

  RE:  19-2174  Andrew Schlafly v. Eagle Forum, et al

Dear Sirs:

  A published opinion was filed today in the above case.

  Counsel who presented argument on behalf of the appellant and appeared on the brief was Andrew Layton Schlafly, of Far Hills, NJ.

  Counsel who presented argument on behalf of the appellee was Patrick A. Bousquet, of Saint Louis, MO. The following attorneys also appeared on the appellee brief;  James P. Sanders, of Saint Louis, MO.,  Daniel R. Coffman, of Saint Louis, MO.

  The judge who heard the case in the district court was Honorable John A. Ross. The judgment of the district court was entered on May 3, 2019.

  If you have any questions concerning this case, please call this office.

  Michael E. Gans
  Clerk of Court

AMT

Enclosure(s)

cc:  MO Lawyers Weekly


  District Court/Agency Case Number(s):   4:17-cv-00283-JAR

# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-2174
_____

Andrew Layton Schlafly, in his official capacity as both a Director and Member of the Eagle Forum

*Plaintiff - Appellant*

v.

Eagle Forum, a Foreign Nonprofit Corporation; Eunie Smith, in her official capacity as First Vice President of Eagle Forum; Cathie Adams, in her official capacity as Second Vice President of Eagle Forum; Rosina Kovar, in her official capacity as At-Large Director of Eagle Forum; Carolyn McLarty, in her official capacity as Director of Eagle Forum

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: February 11, 2020
Filed: July 29, 2020
_____

Before SMITH, Chief Judge, COLLOTON and STRAS, Circuit Judges.
_____

SMITH, Chief Judge.

Andrew L. Schlafly ("Andrew"), a member of the Board of Directors of Eagle Forum ("Board"), a nonprofit corporation, sued Eagle Forum and several of its individual officers and directors for alleged violations of the organization's bylaws and alleged breach of fiduciary duties in connection with Eagle Forum's attempt to remove Andrew and other directors from the Board. After the district court[1] denied as moot Andrew's first motion for a temporary restraining order (TRO), Andrew filed a second motion for TRO. The district court denied the motion and sanctioned Andrew by requiring him to pay Eagle Forum's cost to defend against the motion. Shortly after the court's award of attorneys' fees, Eagle Forum moved to dismiss Andrew's complaint. The court dismissed Andrew's complaint without prejudice and granted him leave to file an amended complaint. Thereafter, the district court dismissed Andrew's amended complaint. Andrew appeals the district court's imposition of sanctions and dismissal of his claims in his original complaint. We affirm.

## I. *Background*

Eagle Forum is a nonprofit, nonsectarian, and nonpartisan membership organization that regularly conducts business in St. Louis County, Missouri, including co-sponsoring an annual meeting of its members in September. It is a corporation formed under the Illinois General Not for Profit Corporation Act, 805 Ill. Comp. Stat. § 105, et seq., and governed by the Bylaws of Eagle Forum ("Bylaws"). It was founded in 1975 by Phyllis Schlafly ("Phyllis").

Eagle Forum's "Bylaws may be amended by unanimous vote of the Board of Directors, or by the affirmative vote of two-thirds of all the Directors then serving, provided notice of the proposed changes is mailed to each Director at least ten days in advance of the meeting." Ex. B at 8, *Schlafly v. Eagle Forum*, No. 4:17-cv-

---

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

-2-

00283-JAR (E.D. Mo. Apr. 27, 2018), ECF No. 72-2. "All matters not covered by these Bylaws shall be governed by Robert's Rules of Order Newly Revised [("Robert's Rules")]." *Id.*

At the time of the events at issue, the Eagle Forum Board consisted of ten directors: Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, Shirley Curry, John Schlafly ("John"), Andrew, Kathleen Sullivan, and LaNeil Wright Spivy. Andrew, John, and Cori are the children of Phyllis. The "Majority Directors" were Cori, Smith, Adams, Kovar, McLarty, and Curry. The "Minority Directors" were Andrew, John, Sullivan, and Spivy. Ed Martin was the president of Eagle Forum.

In the months leading up to Phyllis's death, John and Cori disagreed as to the positions they believed Phyllis and Eagle Forum should take on certain political issues.

On April 10, 2016, Phyllis sent a letter to Smith, Adams, Kovar, McLarty, and Cori asking them to resign. In the letter, Phyllis expressed her concern that the directors were questioning how Eagle Forum operates and her "judgment on personnel." Ex. A at 2, *Schlafly v. Eagle Forum*, No. 4:17-cv-00283-JAR (E.D. Mo. Apr. 27, 2018), ECF No. 72-1. Phyllis believed that the directors were attacking her and her work. She asked the directors to resign so she could "continue with Eagle Forum's important work." *Id.* They did not resign.

On April 11, 2016, the Board held a meeting at which the Majority Directors voted to remove Martin as president of Eagle Forum. The Minority Directors refused to acknowledge the motions and resolutions passed at the meeting.

On April 22, 2016, the Majority Directors filed an action against Martin and John in Madison County Circuit Court. The complaint asserted breach-of-fiduciary-

-3-

duty claims against Martin and John regarding, among other things, their failure to acknowledge the actions taken at the April 11 meeting and their attempts to block the Majority Directors from accessing Eagle Forum property, assets, and resources.

In September 2016, Phyllis died.

On October 20, 2016, the Madison County Circuit Court entered an amended TRO, suspending Martin and John from their positions. It also enjoined them from accessing Eagle Forum property and granted the Majority Directors temporary sole control and possession over all Eagle Forum property. The court additionally ordered Smith to serve as the Acting President of Eagle Forum.

In January 2017, Smith, as the Acting President of Eagle Forum, learned that Spivy intended to resign her position due to declining health. On January 4, 2017, Smith called Spivy, who advised Smith "that she already considered herself resigned from the Eagle Forum Board of Directors." Ex. E at 1, *Schlafly v. Eagle Forum*, No. 4:17-cv-000283-JAR (E.D. Mo. Sept. 13, 2017), ECF No. 38-5. Smith suggested that Spivy confirm her resignation in writing. On January 11, 2017, Smith received a letter from Spivy, stating, "Please consider this my resignation from Eagle Forum Organization C4." *Id.* at 2.

In the meantime, on January 6, 2017, Smith, Adams, and Cori called a special meeting of the Board for January 28, 2017, via a "Notice of Special Meeting of the Board of Directors of Eagle Forum." The notice explained that the special meeting's purpose was to remove John, Andrew, and Sullivan as directors. As reflected in the notice, the meeting was scheduled for January 28, 2017. The notice advised that the corporation's directors were prohibited from voting by proxy.

On January 19, 2017, Andrew filed a petition for TRO, preliminary injunction, permanent injunction, and declaratory judgment against Eagle Forum, Smith, Adams,

-4-

Kovar, and McLarty (collectively, "defendants") in St. Louis County Circuit Court. Andrew asked that the court enjoin the individual defendants from taking any action not authorized by the Bylaws and enjoin them from holding or participating in the January 28, 2017 meeting. Andrew sought a declaratory judgment that the January 28, 2017 meeting was in violation of the Bylaws and was ultra vires and that the individual defendants were acting in bad faith.

On January 25, 2017, the defendants removed the case to federal court. That same day, Andrew filed a motion for TRO and motion for preliminary injunction to prevent the January 28, 2017 meeting from occurring. On January 26, 2017, the defendants moved to quash service of the summons and complaint; moved to dismiss or, in the alternative, to transfer; and moved to strike. The district court conducted a conference call with the parties concerning the motions. During that call, Andrew informed the district court that John and Martin were seeking the same relief in Madison County Circuit Court.

On January 27, 2017, the Madison County Circuit Court held a hearing on John and Martin's emergency motion to restrain and bar the special meeting on January 28, 2017. At the hearing's conclusion, the state court denied their motion.

The Board held the special meeting as planned on January 28, 2017. Andrew, John, and Sullivan did not attend. The Board voted six to zero to remove Andrew, John, and Sullivan. The Board also amended the Bylaws. Specifically, the Bylaws were amended to remove the incorporation of Robert's Rules into the Bylaws and to add a provision to permit the Board to remove the at-large director (the only director elected by Eagle Forum's membership) without notice to the membership.

On September 7, 2017, the district court granted the motion to quash; denied the motion to dismiss, or in the alternative, to transfer; denied as moot the motion for TRO; denied without prejudice the motion for preliminary injunction; and denied as

-5-

moot the motion to strike. The district court granted the motion to quash the summons and complaint because the individual defendants were not properly served. Eagle Forum was the sole remaining defendant.

On September 11, 2017, Andrew filed another motion for TRO and preliminary injunction. He requested that the district court enjoin a meeting of the Board scheduled for the morning of September 15, 2017. He alleged that "[s]everal directors of the Board of Defendant Eagle Forum held a meeting on January 28, 2017 . . . and purportedly took action as the Board of Eagle Forum in violation of the applicable Bylaws." Emergency Mot. by Pl. for TRO & Prelim. Inj. at 1, *Schlafly v. Eagle Forum*, 4:17-cv-00283-JAR (E.D. Mo. Sept. 11, 2017), ECF No. Doc. 32. In addition, he alleged that "the group of directors purportedly removed and replaced three members of the Board, and changed the Eagle Forum Bylaws, without adequate notice." *Id.* Andrew claimed that at the upcoming September 15, 2017 meeting "[t]hree directors who were improperly elected to the Board at the January Meeting are expected to participate and vote . . . , while three directors who were improperly removed at the January meeting are excluded from the upcoming meeting and received no formal notice of it." *Id*. at 2.

On September 14, 2017, the district court denied Andrew's emergency motion for TRO and denied without prejudice his motion for a preliminary injunction. The court also ordered Eagle Forum to submit a statement of its costs in defending the motion for TRO. On February 5, 2018, the district court granted in part Eagle Forum's motions for attorney's fees and assessed attorney's fees totaling $9,851.25 against Andrew. The court assessed the fees against Andrew as a sanction for his misconduct, "the most recent of which was filing a second motion for [TRO] in what appeared to the Court to be a blatant effort to tie up the resources of Defendant Eagle Forum." *Schlafly v. Eagle Forum*, No. 4:17-cv-00283-JAR, 2018 WL 705061, at *2 (E.D. Mo. Feb. 5, 2018).

The court found "unpersuasive" Andrew's argument "that he was not a named party to the Madison County lawsuit and, as a result, could not be responsible for the identical motion filed in that case." *Id.* The court cited "the fact that [Andrew's] brother, who attended the hearing, is a key defendant in that litigation." *Id.* The court also concluded that Andrew "was merely trying to relitigate issues set forth in his first motion for [TRO]" in filing the second motion for TRO. *Id.* As support, the court cited Andrew's "repeated references to events that took place at the January meeting and his grievances related to his removal at that meeting and the change in bylaws." *Id.* "[B]ased on [Andrew's] conduct when he first sought a [TRO], as well as his attempt to relitigate the same issues in a subsequent motion for [TRO], the [c]ourt . . . award[ed] Defendant Eagle Forum the reasonable attorney's fees it incurred in defending the second motion for [TRO]." *Id.* at *3. The court concluded that Andrew acted in bad faith "by filing a second motion for [TRO], which the [c]ourt believe[d] was designed to harass Defendant Eagle Forum and contribute to an effort to tie up its present directors in various lawsuits." *Id.* at *4.

Andrew appealed the district court's denial of his second TRO motion and award of attorney's fees to Eagle Forum. We dismissed the appeal for lack of jurisdiction. *Schlafly v. Eagle Forum*, 771 F. App'x 723, 724 (8th Cir. 2019) (per curiam).

Shortly after the district court's award of attorney's fees, Eagle Forum moved to dismiss Andrew's complaint. In his complaint, Andrew alleged that the January 28, 2017 meeting removing him as a director was invalid because it prohibited proxy voting. He alleged that the notice was inadequate for its failure to disclose that one of the purposes of the meeting was to change the Bylaws.

In its motion to dismiss, Eagle Forum argued that Andrew failed to state a claim because Eagle Forum's actions were lawful under the Illinois General Not for Profit Corporation Act ("the Act"), 805 Ill. Comp. Stat. § 105, et seq. The district

-7-

court noted that the Bylaws were "silent regarding proxy voting by a director" but that "the Act expressly prohibits directors of a non-profit corporation from voting by proxy." Mem. & Order at 3, *Schlafly v. Eagle Forum*, No. 4:17-cv-00283-JAR (E.D. Mo. Apr. 13, 2018), ECF No. 71 (citing 805 Ill. Comp. Stat. § 105/108.05(d)). Nonetheless, Andrew relied on the Act's language that "[i]n the case of a corporation with members entitled to vote for directors, no director may be removed, except . . . by the affirmative vote of two-thirds of the votes present and voted, either in person or by proxy." 805 Ill. Comp. Stat. § 105/108.35(c)(1).

The court, however, concluded that § 105/108.35(c)(1) "applies only to corporations with members entitled to vote for directors." Mem. & Order at 4. By contrast, "Eagle Forum's by-laws expressly provide that sitting directors, not the membership, vote on incoming directors, while members vote on the at-large director." *Id.* As a result, the court held that "the Act's prohibition on directors voting by proxy controls" and that "the notice prohibiting proxy voting was lawful." *Id.*

Eagle Forum next argued that the district court should dismiss Andrew's complaint because Andrew could not prove that the Board's vote amending the Bylaws caused his removal, i.e., he could not "prove that had the by-laws not been amended, [Andrew] would still be a director." *Id.* The court observed that while "the notice of the special meeting failed to include an agenda item about amending the by-laws," "the Complaint [was] devoid of any allegation that the by-laws were amended at the special meeting or how such amendment caused [Andrew's] injury." *Id.* At the time Andrew filed his complaint, the meeting had not yet taken place. The court concluded that it could not "infer allegations of an act and subsequent injury that are not expressly pled in the Complaint. Therefore, the Court . . . grant[ed] in part Eagle Forum's motion to dismiss and grant[ed] [Andrew's] request for leave to amend the Complaint." *Id.*

-8-

Andrew subsequently filed his first amended complaint in his capacity as a *member* of Eagle Forum, as opposed to his capacity as a *director* of Eagle Forum. He asserted two breach-of-fiduciary-duty claims. In Count I, Andrew alleged that the individual defendants breached the fiduciary duty owed to Eagle Forum members when they failed to comply with the Bylaws and made changes to them without notice to the membership, resulting in the violation of certain membership rights, some of which were contained in Robert's Rules. Andrew sought (1) injunctive relief against all the individual defendants in the form of rescinding the changes to the Bylaws made on January 28, 2017; and (2) the return to Eagle Forum of any assets dissipated since the changes to the Bylaws.

In Count II, Andrew alleged that the individual defendants breached their duties of candor and loyalty "by changing the Bylaws and having an undisclosed side agreement among themselves" that "improperly influences how the Individual Defendants vote as Directors." Am. Compl. at 7, *Schlafly v. Eagle Forum*, No. 4:17-cv-00283-JAR (E.D. Mo. Apr. 27, 2018), ECF No. 72. Andrew claimed that this side agreement disenfranchises members by distorting the votes. He also claimed that the individual defendants have failed to announce the results of the at-large membership election and have improperly allowed at-large Director Kovar to remain on the Board. Andrew sought disclosure and rescission of the side agreement and replacement of Defendant Kovar by the successor elected by the membership.

Eagle Forum moved to dismiss the first amended complaint, arguing that (1) Andrew lacked standing to bring a direct action for breach of fiduciary duty because those claims belong solely to Eagle Forum; and (2) Andrew, in his capacity as a member, failed to allege sufficient facts to establish any violation of the notice requirements contained in the Bylaws. Alternatively, Eagle Forum sought a stay in the matter pending the disposition of the lawsuit in Madison County Circuit Court, which Eagle Forum argued included many of the same parties and identical claims and theories.

-9-

The court assumed, without deciding, that Andrew had standing to bring suit against the individual defendants. The court noted that Andrew alleged on the face of the amended complaint that the failure to provide proper notice affected his voting rights. But, as to Count I, the court held that Andrew failed to state a claim because Andrew brought suit in his capacity as a *member* of Eagle Forum, and the Bylaws did not provide that a *member* is entitled to notice.

As to Count II, Andrew brought a direct action against the individual defendants for violating their fiduciary duties to Andrew and other members of Eagle Forum. Because the injury was not separate and distinct from that suffered by other shareholders, the court concluded that Andrew had to plead a wrong involving a contractual right of a member, i.e., the right to vote or to assert majority control. Andrew asserted that a secret side agreement disenfranchises Eagle Forum members by distorting the vote of the at-large director, who, in turn, was elected by the membership. He also claimed that the individual defendants failed to disclose the results of the election of the at-large director in violation of the Bylaws. The court concluded that such violations involved a contractual right of a member of Eagle Forum, which may be asserted by an individual member in a direct action. Thus, the court denied the motion to dismiss as to Count II. However, the court questioned whether it had subject matter jurisdiction. Andrew sought only equitable relief in Count II. The court found it "unclear from the face of the complaint whether the [c]ourt has subject matter jurisdiction over this action" and "direct[ed] [Andrew] to show cause why this matter should not be dismissed for lack of subject matter jurisdiction." *Schlafly v. Eagle Forum*, No. 4:17-cv-00283-JAR, 2019 WL 77362, at *4 (E.D. Mo. Jan. 2, 2019).

Thereafter, the district court reviewed the record and determined that Andrew asserted only claims against Eagle Forum in Count I; thus, based upon the court's prior order dismissing Count I of Andrew's amended complaint, the court dismissed Eagle Forum without prejudice for failure to state a claim against it. In addition, the

-10-

court found it "clear that none of the [i]ndividual [d]efendants have been served, despite [Andrew] amending his lawsuit to specifically plead that the [i]ndividual [d]efendants themselves have committed a tort or similar wrongdoing." Order Dismissing Def. Eagle Forum and Order to Show Cause at 3, *Schlafly v. Eagle Forum*, No. 4:17-cv-00283-JAR (E.D. Mo. Apr. 17, 2019), ECF No. 85. The court directed Andrew to show cause why the case should not be dismissed for lack of timely service.

In response to the order to show cause, Andrew argued that "no party [had] objected to a lack of service of the amended complaint, which was served to the [individual defendants'] attorney who had entered a limited appearance for the purpose of filing the motion to quash." Mem. & Order of Dismissal at 2–3, *Schlafly v. Eagle Forum*, No. 4:17-cv-00283-JAR (E.D. Mo. May 3, 2019), ECF No. 88. He also argued that "good cause exist[ed] for his failure to timely serve the individual [d]efendants because it was reasonable for him to anticipate that the [i]ndividual [d]efendants waived formal service in light of Eagle Forum's defense of the case." *Id.* at 3. Finally, he "argue[d] . . . in the absence of good cause, the [c]ourt should extend the time to serve the [i]ndividual [d]efendants because there would be no prejudice to the [i]ndividual [d]efendants." *Id.*

The court concluded that Andrew "had ample notice that the [i]ndividual [d]efendants were not participating in this litigation" based on the order granting their motion to quash. *Id.* at 5. While attorneys did enter appearances on behalf of the individual defendants, those appearances were for the purpose of litigating the motion to quash. Additionally, Eagle Forum never stated "that it represented the [i]ndividual [d]efendants." *Id.* The court also found no evidence suggesting that Andrew "made any efforts to effect service after the [c]ourt granted the [i]ndividual [d]efendants' motion to quash." *Id.* As a result, the court concluded that Andrew "failed to establish good cause for [his] failure to timely serve the [i]ndividual [d]efendants." *Id.*

-11-

Finally, the court concluded that Andrew failed to show excusable neglect because he had been on notice since September 9, 2018, that the individual defendants were not formally served. According to the court, Andrew's only explanation was his assumption that Eagle Forum represented the interests of all the defendants named in the action. The court found that the individual defendants would suffer prejudice if it permitted Andrew to serve them after the case had been pending for over two years. Therefore, the court denied Andrew's request to serve the individual defendants out of time and dismissed the case without prejudice.

## II. *Discussion*

On appeal, Andrew asks this court to reverse (1) the order dismissing his *original* complaint for failure to state a claim; and (2) the order awarding attorney's fees to Eagle Forum as a sanction ("sanctions order"). He also requests that we reassign his case to a different district judge on remand to ensure fair and timely adjudication of his claims.

## A. *Dismissal of Original Complaint*

Andrew argues that the district court erred in dismissing the claim in his original complaint that Eagle Forum improperly removed him as a director without allowing proxy voting, in violation of Illinois law. He also argues that the district court erred in dismissing his claim that Eagle Forum violated its Bylaws by changing the Bylaws without notice.

In response, Eagle Forum argues that Andrew "waived any claim that the district court improperly dismissed his original [c]omplaint against Eagle Forum" by filing an amended complaint in which he "abandon[ed] his declaratory judgment claim and advance[d] an entirely new legal theory." Appellee's Br. at 11.

-12-

### 1. *Waiver*

"Generally, an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *Acuity v. Rex, LLC*, 929 F.3d 995, 999 (8th Cir. 2019) (internal quotation omitted). As a result, "a plaintiff who amends his complaint and dismisses certain claims waives his right to appeal them." *Id.* "But we have refused to find waiver where the court's involuntary dismissal of the original counts struck a vital blow to a substantial part of plaintiff's cause of action." *Id.* (internal quotation omitted).[2]

The waiver rule for amended complaints thus has an exception. *See id.* But in applying the exception, we have "dr[awn] a line between claims that were dismissed for technical deficiencies and those dismissed for legal deficiencies." *Graham v. Hubbs Mach. & Mfg., Inc.*, No. 4:14-cv-419 (CEJ), 2015 WL 10986348, at *1 (E.D. Mo. June 15, 2015) (citing *Williamson v. Liverpool & London & Globe Ins. Co.*, 141 F. 54 (8th Cir. 1905)). "[W]aiver would exist if the dismissal was for 'indefiniteness, incompleteness, . . . insufficiency of statement . . . [or] technical defects.'" *Id.* (alterations in original) (quoting *Williamson*, 141 F. at 57).

Thus, "claims dismissed for technical deficiencies are waived if not re-pleaded in the amended complaint, but claims dismissed for a legal deficiency need not be re-pleaded to trigger preservation." *Id.*; *see also* 6 Charles Alan Wright et al, *Federal Practice & Procedure* § 1476 (3d ed. 2020) ("[A] party who amends his pleading to conform it to a court ruling only waives objections to that order insofar as it applies to technical defects in the pleading; the party does not waive exceptions to rulings

---

[2]"It is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected." *Id.* (internal quotation omitted). As we have recognized in the context of removal, "a motion to amend is involuntary where the plaintiff 'faced the Hobson's choice of amending his complaint or *risking* dismissal.'" *Id.* (quoting *Karnes v. Poplar Bluff Transfer Co. (In re Atlas Van Lines, Inc.)*, 209 F.3d 1064, 1067 (8th Cir. 2000)).

that strike a 'vital blow' to a substantial portion of his claim. This seems to be a reasonable standard for determining when a party who amends the pleadings to avoid dismissal should be permitted to assert the trial court's alleged error in its original determination on appeal.").

We conclude that Andrew did not waive his claim that Eagle Forum violated Illinois law by not permitting proxy voting. The district court dismissed this claim, holding as a matter of law that Eagle Forum did not violate Illinois law because "the Act's prohibition on directors voting by proxy controls. As a result, the notice prohibiting proxy voting was lawful." Mem. & Order at 4. The district court's dismissal, therefore, was based on a legal deficiency in Andrew's complaint and thus "struck a vital blow" to this claim. *Acuity*, 929 F.3d at 999 (internal quotation omitted).

But the same cannot be said for Andrew's Bylaws claim for declaratory and injunctive relief set forth in the original complaint. When discussing this claim, the district court stated:

> *It appears that the notice of the special meeting failed to include an agenda item about amending the by-laws*. However, the Complaint is devoid of any allegation that the by-laws were amended at the special meeting or how such amendment caused Plaintiff's injury. Instead, Plaintiff pleads that "upon information and belief, the Individual Defendants also plan to attempt to change the by-laws of Eagle Forum . . . in order to advance their own interests . . . ." (Doc. No. 8 at ¶ 28). *The Court notes that at the time Plaintiff's Complaint was filed, the meeting had not yet taken place*. However, even accepting as true Plaintiff's factual allegations, the *Court cannot infer allegations of an act and subsequent injury that are not expressly pled in the Complaint*. Therefore, the Court will grant in part Eagle Forum's motion to dismiss and *grant Plaintiff's request for leave to amend the Complaint*.

-14-

Mem. & Order at 4 (alterations in original) (emphases added).

The district court found technical deficiencies—the lack of a factual allegation of Andrew's injury—in Andrew's Bylaws claim. As a result, it granted him leave to amend his complaint to add additional facts to link the amending of the Bylaws to his removal as director. But Andrew did not do this in his amended complaint; instead, he alleged two completely new claims based on his status as a member, not director. Therefore, we hold that Andrew waived the Bylaws claim set forth in his original complaint.

Accordingly, we will address only whether the district court erred in dismissing Andrew's claim that Eagle Forum violated Illinois law by not permitting proxy voting.

### 2. *Proxy Voting Claim*

"We review a Rule 12(b)(6) dismissal for failure to state a claim *de novo*, accepting all well-pleaded factual allegations as true and construing all reasonable inferences in the nonmoving party's favor." *Vigeant v. Meek*, 953 F.3d 1022, 1024 (8th Cir. 2020).

All parties agree that Illinois law applies in this diversity action. Non-profit corporations in Illinois are governed by the Act and the corporation's articles of incorporation and bylaws. The Act requires each non-profit corporation to have a board of directors to manage the corporation's affairs. 805 Ill. Comp. Stat. § 105/108.05(a). "No director may act by proxy on any matter." *Id.* § 105/108.05(d).

Section 105/108.35 concerns the removal of directors and provides, in relevant part:

-15-

(b) In the case of a corporation with no members or *with no members entitled to vote on directors*, *a director may be removed by the affirmative vote of a majority of the directors then in office present and voting at a meeting of the board of directors at which a quorum is present.*

(c) In the case of a corporation with *members entitled to vote for directors*, no director may be removed, except as follows:

> (1) A director may be removed by the affirmative vote of two-thirds of the votes present and voted, *either in person or by proxy*.
>
> . . . .
>
> (4) If a director is elected by a class of voting members entitled to vote, directors or other electors, that director may be removed only by the same class of members entitled to vote, directors or electors which elected the director.

*Id.* § 105/108.35(b)–(c) (emphases added).

Here, the district court determined that § 105/108.35(c)(1)

applies only to corporations with members entitled to vote for directors. . . . Eagle Forum's by-laws expressly provide that sitting directors, not the membership, vote on incoming directors, while members vote on the at-large director. Thus, the section of the Act relied upon by Plaintiff does not apply and the Act's prohibition on directors voting by proxy controls. As a result, the notice prohibiting proxy voting was lawful.

-16-

Mem. & Order at 4.

On appeal, Andrew argues that § 105/108.35(c)(1) was triggered because the membership *does* elect the at-large director. Specifically, he asserts that because there is at least one director who is elected by the membership, then "'*no* director may be removed' without allowing proxy voting." Appellant's Br. at 21 (bold omitted).This is a tortured reading of the statute.

All of Eagle Forum's directors but one are chosen by "[t]he affirmative vote of two-thirds of all the Directors," Ex. B at 4, while the at-large director is elected by the membership. It is undisputed that Andrew, John, and Sullivan were all directors chosen by the directors,[3] not the membership; therefore, they "may be removed by the affirmative vote of a majority of the directors then in office present and voting at a meeting of the board of directors at which a quorum is present." 805 Ill. Comp. Stat. § 105/108.35(b). Directors are prohibited from voting by proxy. *Id.* § 105/108.05(d). By contrast, Kovar, the at-large director elected by the membership, "may be removed by the affirmative vote of two-thirds of the votes present and voted, either in person or by proxy." *Id.* § 105/108.35(c)(1).

Section 105/108.35(c)(4) further buttresses our conclusion. It explains that "[i]f a director is elected by a class of voting members entitled to vote, directors[,] or other electors, [then] that director may be removed only by the same class of members entitled to vote, directors[,] or electors which elected the director." In other words, because Andrew was elected by the directors, he can be removed only by the directors, who are prohibited under Illinois law from voting by proxy.

---

[3]In the original complaint, Andrew did not challenge the directors'—as opposed to the membership's—power to remove him as a director. Instead, he argued Eagle Forum violated Illinois law by not permitting the directors—as opposed to the membership—to vote by proxy.

-17-

Accordingly, we affirm the district court's dismissal of Andrew's claim that Eagle Forum violated Illinois law by not permitting proxy voting.

## B. *Sanction Order*

Andrew also appeals the district court's sanctions order. He argues that  the district court "acted contrary" to the Supreme Court's instruction that a district "'court ordinarily should rely on the [Federal] Rules rather than the inherent power' before imposing sanctions." Appellant's Br. at 27 (alteration in original) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)). In addition, he asserts that his "motion below for injunctive relief against an upcoming Board meeting is commonplace, even essential, in takeover contests, and attorneys' fees are not properly awarded to punish a plaintiff for so moving." *Id.* He also maintains that the district court erred in not requiring Eagle Forum to submit affidavits and records in support of the fee award.

"We review a court's imposition of sanctions under its inherent power for abuse of discretion." *Chambers*, 501 U.S. at 55.

The Supreme Court's "prior cases have indicated that the inherent power of a court [to impose sanctions] can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49. Indeed, the Supreme Court has rejected the notion "that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." *Id.* at 50. "This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under . . . the [Federal] Rules." *Id.* While a "court ordinarily should rely on the [Federal] Rules rather than [its] inherent power" "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the

-18-

Rules," a "court may safely rely on its inherent power" if in its "informed discretion . . . the Rules are [not] up to the task." *Id.*

"Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45 (internal citation omitted). "[U]ndoubtedly within a court's inherent power" is "the less severe sanction of an assessment of attorney's fees." *Id.* at 45 (internal quotation omitted). "Indeed, there are ample grounds for recognizing that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel, even though the so-called American Rule prohibits fee shifting in most cases." *Id.* (cleaned up). The Supreme Court has recognized that "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46 (internal quotations omitted). A court "may assess attorney's fees against . . . a party [who] shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Id.* at 46 (internal quotation omitted). "Federal courts sitting in diversity can use their inherent power to assess attorney fees as a sanction for bad faith conduct even if the applicable state law does not recognize the bad faith exception to the general rule against fee shifting." *Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.*, 103 F.3d 1422, 1435 (8th Cir. 1997).

"A court's inherent power to award attorney fees pursuant to the bad faith exception 'depends not on which party wins the lawsuit, but on how the parties conduct themselves *during the litigation*.'" *Id.* (quoting *Chambers*, 501 U.S. at 53). "[I]n determining whether to award attorney fees based on the litigant's bad faith, the court may consider conduct both during and prior to the litigation, although the award may not be based solely on the conduct that led to the substantive claim." *Id.* (cleaned up). "[B]efore a district court may impose sanctions, the individual must receive

-19-

notice that sanctions against h[im] are being considered and an opportunity to be heard." *Pls.' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005).[4] A remedial award of attorney's fees as a sanction occurs when the fee is "paid to the opposing party as compensation for the attorney's fees incurred as a direct result of the unethical behavior." *Id.* at 808.

Here, the district court acted within the scope of its "informed discretion" by relying on its inherent power, because Federal Rule of Civil Procedure 11 was not "up to the task" in this situation. *Chambers*, 501 U.S. at 50; *see also* Fed. R. Civ. P. 11(c)(1) (providing that court "may impose an appropriate sanction on any attorney" that violated Rule 11(b) by, among other things, presenting to the court a pleading for the purpose of "harass[ing], caus[ing] unnecessary delay, or needlessly increas[ing] the cost of litigation"). First, the offending pleading was an "emergency motion" for TRO to enjoin a meeting scheduled for four days hence, so a Rule 11 motion with the 21-day safe harbor period required by Rule 11(c)(2) was not practical. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions . . . must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). Second, the district court does not have authority under Rule 11 to award attorney's fees on its own motion.  *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must

---

[4]In the present case, Andrew does not assert that he was deprived of notice and an opportunity to be heard prior to the district court's imposition of sanctions. Indeed, Eagle Forum requested an award of costs and attorney's fees in its response to Andrew's second TRO motion, and the matter was discussed at the hearing on the second TRO motion. Moreover, the district court afforded Andrew an opportunity to respond with written objections and argument before entering a final order imposing sanctions.

be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) ("It is not permissible to award attorneys' fees under Rule 11 when the sanctions are imposed sua sponte . . . ."). It was thus an appropriate case for the use of inherent power to award fees. *See, e.g.*, *Methode Elec., Inc. v. Adam Tech., Inc.*, 371 F.3d 923, 927–28 (7th Cir. 2004) ("The case before us today illustrates the wisdom of retaining the inherent power of the courts. As in many cases involving a request for preliminary relief, blind adherence to the procedures in Rule 11 is not possible. Events often move too fast to allow strict compliance with the rule.").

We conclude that the district court did not abuse its discretion in awarding attorney's fees to Eagle Forum under its inherent power as a sanction against Andrew for acting in bad faith. In its order granting attorney's fees to Eagle Forum as a sanction against Andrew, the district court explained that it was awarding the attorney's fees to Eagle Forum under its inherent power because of Andrew's misconduct during the litigation. Specifically, Andrew acted in bad faith by "filing a second motion for [TRO] in what appeared to the [c]ourt to be a blatant effort to tie up the resources of Defendant Eagle Forum." *Schlafly*, 2018 WL 705061, at *2. The court rejected Andrew's "assertion that he was not a named party to the Madison County lawsuit and, as a result, could not be responsible for the identical motion filed in that case" because Andrew's "brother, who attended the hearing, is a key defendant in that litigation." *Id.* Moreover, the court concluded that Andrew's second TRO motion was an attempt "to relitigate issues set forth in his first motion for [TRO]." *Id.* As evidence, the court cited "[Andrew's] repeated references to events that took place

-21-

at the January meeting and his grievances related to his removal at that meeting and the change in bylaws." *Id.*

We also find the amount of the monetary sanction against Andrew to be appropriate. The record reflects that the $9,851.25 sanction "relates concretely to costs . . . directly incurred because of [Andrew's] actions." *Bayer*, 419 F.3d at 808. The court "determine[d] the amount of a reasonable fee" by looking at "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Schlafly*, 2018 WL 705061, at *3 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The court reviewed the invoice that Eagle Forum submitted "for the work performed by two attorneys for four days of work." *Id.* at *4. It found "that spending almost 30 hours on reviewing filings and preparing a brief in opposition to a [TRO] is excessive." *Id.* For that reason, it "reduce[d] by half the hours spent in these two categories." *Id.* In addition, the court did not "include in the fee award a portion of the time billed by the attorney who did not argue the [TRO] motion." *Id.*

The district court, therefore, provided a reasoned basis for its award of $9,851.25 in attorney's fees to Eagle Forum by relying on and analyzing the invoice submitted by Eagle Forum. This is not a case in which the court "act[ed] on [an] unsworn oral estimate offered by counsel in open court" instead of relying on attorney records "relating to the time spent on the [TRO] motion." *Anderson v. CitiMortgage, Inc.*, 519 F. App'x 415, 418 (8th Cir. 2013) (per curiam).

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

STRAS, Circuit Judge, concurring in the judgment in part and dissenting in part.

-22-

Reliance on "inherent authority" to sanction parties for litigation misconduct should always be a last resort. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991); *see id.* at 50 ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."). It is, after all, just another name for an "undelegated power[]"—one that should be exercised with "especial 'restraint and discretion.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186–87 n.5 (2017) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). The district court failed to show restraint here, much less "especial" restraint, by jumping straight to inherent authority without first considering whether it could sanction Schlafly under Federal Rule of Civil Procedure 11. *See* Fed. R. Civ. P. 11(b)(1), (c) (authorizing sanctions for "needlessly increas[ing] the cost of litigation"). Because Rule 11 may well have been "up to the task," *Chambers*, 501 U.S. at 50, and the district court said nothing to suggest otherwise, I would vacate the award of attorney fees and remand for further consideration. For this reason, I respectfully dissent from Part II.B. of the court's opinion.[5]

---

[5]Schlafly's remaining arguments either have no merit or were forfeited, so I otherwise concur in the judgment.

-23-